EDWARD J. BERWIND V. GALVESTON AND HOUSTON INVESTMENT
COMPANY.

Decided February 23, 1899.

**1.   Cities—Contract for Street Improvements.**

A city which has contracted for the construction of continuous sidewalks on certain streets has no authority to accept the work as against abutting owners where intervening sidewalk in front of homesteads on which the assessments would not be a lien was not constructed.

**2.   Same—Acceptance Not Conclusive.**

The acceptance by a city of a sidewalk is not conclusive as against the abutting owners, where such sidewalk, instead of being continuous as required by the contract, is constructed only in front of premises other than homesteads.

**3.   Same—Acceptance Does Not Legalize.**

No recovery can be had against abutting owners for the construction of a sidewalk where the sidewalk was not made continuous as required by the contract, although the city council has accepted the work, since it had no authority to do so.

**4.   Street Improvement Certificate Not a Negotiable Instrument.**

Street improvement certificates issued for the construction of a sidewalk are not negotiable, and are subject in the hands of an assignee to whatever defense might have been available against the assignor.

APPEAL from Harris.  Tried below before Hon. W. H. WILSON.

*C. A. Keller, Ligon Johnson,* and *Mason Williams,* for appellant.

*Hutcheson, Campbell & Myer,* for appellee.

GARRETT, CHIEF JUSTICE.—This action was brought by the appellant, Edward J. Berwind, against the Houston and Galveston Investment Company upon certain improvement certificates issued by the city of Houston to the Litho-Carbon Rubber Company for the construction of sidewalks abutting appellee's property in the Fair Ground addition in the city of Houston, and assigned by said company to the appellant. The work was done under a contract entered into between said Litho-Carbon Rubber Company and the city council, acting under the charter of the city. Appellant prayed for judgment against the appellee for the amount of the certificates, together with interest, costs, and attorney's fees, and a foreclosure of the lien given by the charter for the payment thereof, alleging also that he was a purchaser of the certificates for a valuable consideration before maturity, and was the legal owner and holder thereof. Appellee's answer was a general demurrer, general denial, and a special plea denying the authority of the city to issue the certificates, and alleging that the sidewalks built by the contractor were not continuous, connecting, and uninterrupted sidewalks as provided for in the contract, and had not been built in accordance with the specifications therefor; and that the amounts called for in the certificates were more than called for by the contract, plans, and specifications; and that there was a want of consideration. By a supplemental petition the ap-

pellant demurred to the answer, and also pleaded an estoppel.  The case was tried without a jury, and resulted in a judgment against the right of the appellant to recover upon the certificates or for any sum whatever.

By a resolution of the city council of the city of Houston, regularly passed February 11, 1895, after proper reference to the board of public works, as required by the charter, the construction of certain sidewalks was provided for as follows:

"Be it resolved by the city council of Houston:

"Section 1.    That it is hereby declared necessary for the public interest that sidewalks be constructed on the following named portions of streets and avenues in the city of Houston where good and sufficient sidewalks of a like character as herein provided do not now exist, viz: West side of Milam Street, from Hadley to Tuam, and on both sides of the following named streets:   Milam from Tuam to Stuart, Louisiana from McGown to Stuart, Smith from McGown to Stuart, Brazos from McGown to Elgin, McGown from Main to Brazos, Dennis from Milam to Bagby, Drew from Milam to Burnett, Tuam from Main to Burnett, and Elgin from Main to Brazos.

"Sec. 2.    That the sidewalks shall be constructed of stone, cement, or asphalt, and bids shall be solicited for said work to be done according to specifications therefor to be prepared by the city engineer and adopted by the city council.

"Sec. 3.    The cost of constructing said improvements, together with the costs of collecting thereof, shall, as provided in section 24 of the charter of the city of Houston, be wholly defrayed by the owner of the lot or lots, block or blocks, or tracts of land when not divided into lots or blocks, abutting on said portions of said streets and avenues to be so improved, and said improvements shall be paid for in three annual installments of nearly equal amounts not less than $10 each, as may be most convenient.

"Sec. 4.    The whole or any portion of the work embraced in this resolution may be included in the same contract or may be divided into separate contracts."

The resolution was duly advertised in a daily newspaper published in the city of Houston for more than four days, commencing February 13, 1895.    The streets were adjacent to each other, and a continuous and connected system of sidewalks was provided for.

After the passage of the resolution the city engineer prepared plans and specifications for the construction of the work in accordance with instructions of the city council given March 11, 1895, and presented them to the council, with the favorable report of the board of public works, and the council adopted them.    The plans and specifications provided that the sidewalk pavement should be not less than four inches thick, upon a bed or subgrade regulated and surfaced to the satisfaction of the engineer, and consisting of a layer not less than three inches in depth of hydraulic cement-concrete, over which should be spread rock-asphalt mastic to a thickness of not less than one inch.    Specific direc-

tions were given as to the material to be used, the preparation of the concrete and mastic, the manner of laying the same, and what the character of the finished work should be, but it is not deemed necessary to set out the same more fully here.

On March 11, 1895, the council authorized the mayor to advertise for bids for the construction of the work in accordance with the resolution, bids to be opened March 25, 1895. The advertisement was duly made by publication in a daily newspaper from March 14th until the bids were opened, and on March 25, 1895, the bids were opened by the council and referred to the board of public works, which reported to a meeting held April 1, 1895, and recommended the acceptance of the bid of the Litho-Carbon Rubber Company. The report was adopted, and the mayor was authorized to enter into a contract with said company. The contract was executed April 18, 1895, and was in due form for the performance of the work in accordance with the resolution of the council and the plans and specifications of the city engineer. The advertisement for bids required the work to be done according to the specifications prepared by the city engineer, approved by the board of public works, and adopted by the city council March 11, 1895, and one file in the office of the city engineer. On March 18, 1895, pending the advertisement for bids, the specifications adopted March 11, 1895, and which specified the asphalt to be used as "rock asphalt, mastic to consist of natural bituminous limestone, equal to the best imported qualities," etc., were amended so as to read: "Rock, Trinidad Lake, or other asphalt equally as good in every respect for sidewalk purposes."

Pending the performance of the work under the contract the case of Higgins v. Bordages, 88 Texas, 455, was finally decided by the Supreme Court holding that assessments for sidewalk improvements were not a lien upon homesteads, and the contractor, in paving the sidewalks mentioned in the resolution, skipped or omitted all parts of sidewalks in front of homesteads except where the owner agreed to pay for the work, and as a consequence the sidewalks were not paved or constructed continuously, but only disconnected parts thereof were constructed. On the west side of Milam Street, from Hadley to Tuam, as appears from the map put in evidence, only one of several blocks appears to have been paved; on Louisiana from McGown to Stuart, parts of blocks 33, 27, and 42, and all of block 36 were not paved; Smith Street from McGown to Stuart, parts of blocks 21, 23, 28, 29, and 31, and all of blocks 17, 19, and 20; Brazos from McGown to Elgin, parts of blocks 9, 11, 14, 19, 20, 21, and all of blocks 10 and 13; McGown from Main to Brazos part of block 17 and all of block 36, as far as appears from the map, which does not extend to Main; Dennis from Milam to Bagby, no pavement at all on blocks 13, 14, 18, and 32, and on part only of 17; Drew from Milam to Burnett, Burnett Street does not appear on map, but as far as shown, parts of blocks 37 and 19, and all of the block 13 and the rest to the west of Bagby were not paved; Tuam from Main to Burnett, as far as shown, parts of blocks 11, 20, and 31 and all of blocks 19 and those to

the west of Bagby; Elgin from Main to Brazos as far as shown, parts of blocks 23, 28, and 41 and all of block 42. The appellee owned lots on Milam, Elgin, Louisiana, Smith, Brazos, Tuam, Drew, and Dennis streets. A number of the blocks in which it owned lots were continuously paved, but no sidewalk on any of the streets on which its property abutted was complete and continuous as called for in the contract, except that on the east side of Milam Street so far as appears from the map in evidence, and there were gaps in the sidewalks of thirteen out of thirty-three block lengths on which the appellee owned property.

On July 29, 1895, the city council adopted the favorable report of the board of public works, accompanied by certificate of the engineer recommending acceptance of the sidewalks constructed. The report was, that the board had examined the sidewalks constructed and found the same completed in substantial compliance with the plans and specifications. The roll of ownership, dated August 24, 1895, was made out and was filed in the office of the city secretary, December 2, 1895. It is in full compliance with the law, except that the certificate of the engineer omits from the certificate given in the charter the concluding words, "and that I have honestly and faithfully prepared the same;" and the city attorney did not indorse thereon a certificate that the roll was "in due form as required by the charter." It appeared from the evidence that the signature of the engineer, G. M. LaNoue, was written by a deputy who had general authority to sign his name. The roll was in due form as required by the charter, and due notice thereof was given. On December 16, 1895, a protest was presented to the city council by the appellee and others against the issuance of the improvement certificates, which, with the roll of ownership, was referred to the mayor and city attorney. Afterwards, on January 27, 1896, the city council made an order that the protest be overruled; that the roll of ownership be approved, and that the certificate be issued. No steps were taken by the appellee to restrain further action on the part of the city officials. The certificates described in the petition were issued to the contractor and were by it assigned to appellant, E. J. Berwind, who, so far as the record shows, is the bona fide owner thereof by transfer to him before maturity for a valuable consideration. Evidence was also introduced pro and con as to the value of the work done in constructing the sidewalks abutting appellee's property. and as to the benefit to the property by reason thereof.

There can be no doubt that the action of the city council in accepting the work of a contractor for public municipal improvements which has not been fully executed on account of defective material used, or want of full compliance with the plans and specifications for the work, would be conclusive against collateral inquiry by a person whose property has been assessed to pay for the same in resisting the tax. 1 Dill. Mun. Corp., sec. 483; Emery v. Bradford, 29 Cal., 75. It is a matter intrusted to the discretion of the council, whether judicial or legislative, and its decision is conclusive when it accepts the work as to the material and manner of execution. But when, instead of a defective construction of the

work, there has been a failure to do the work provided for and contracted to be done, it is quite a different matter.   By the resolution passed February 11, 1895, the city council provided for the construction of sidewalks on a number of adjacent streets and formed a connected system of continuous sidewalks.   The contract of the appellant's assignor was to construct sidewalks throughout the entire system, and this the owners of the abutting property may have had no objection to being taxed for, as it provided them with good walks communicating with the various parts of the district.   A sidewalk immediately in front of a lot, and not extending beyond it on either side, is of very limited advantage.  So it is obvious that the work was to be done as a whole, and not in disconnected parts, and that to construct only a portion of the sidewalks, leaving intervening spaces of greater or less extent, would not be a performance of the contract.   The city council would have no right to accept part performance for the whole, and this would not be involved in its discretionary power to decide as to the sufficiency of the material used and the manner of construction.   While the action of council was conclusive as to the thickness of concrete and asphalt as laid, and quality thereof, it would not be binding in the acceptance of work done which was not in fact done.   All of the steps and conditions precedent to the work taken and complied with were with reference to the work as a whole, which the abutting property owners made no objection to, and the council by its action only acquired jurisdiction of the work as a whole, and had no authority to contract for or accept less, and its action in accepting the disconnected parts of the work done was not binding on the owners of the lots abutting upon the constructed parts.   No authority was conferred on the council to act upon any other or different work.   Charter of Houston, secs. 23 to 29 (Spec. Laws 1895, pp. 20-27); Independence v. Gates (Sup. Ct. Mo.), 19 S. W. Rep., 730; Dougherty v. Hitchcock, 35 Cal., 523; City of Stockton v. Whitmore, 50 Cal., 555; Transportation Co. v. Boyd, 67 Texas, 159.

The case of Dougherty v. Hitchcock, supra, is directly in point.   See also Chambers v. Saterlee, 40 Cal., 530; Brock v. Luning, 89 Cal., 316.

The certificates were not negotiable instruments and they were subject, in the hands of the appellant, to whatever defenses might have been available against the Litho-Carbon Rubber Company.   Since the city council was without authority to contract for or accept the work that was done, there could be no recovery by the appellant either for quantum valebat or for any benefit that may have accrued to the property of the appellee.   The provision of the charter allowing such recovery can only apply where the council has acquired jurisdiction of the subject matter.   This remedy is allowed by the charter in the suit required to be brought by the property owner to restrain further action by the city officials in reference to the matters contained in the petition to the city council objecting to the proceedings after the same has been acted on adversely by the council (Charter, sec. 27; Spec. Laws 1895, pp. 25, 26); but it can not apply where the action of the council is void.

What has been said disposes of all other questions raised by the appellant. A decision of none of them in his favor could cause a different result from that reached by the court below. The judgment is affirmed.

*Affirmed.*

Writ of error refused.