PAGE v. VAUGHAN et al.    (No. 1381.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 27, 1915. Rehearing Denied Feb. 10, 1915.)

1. HOMESTEAD  ⟫81—TITLE OF CLAIMANT— PAROL AGREEMENT FOR SALE OF LAND.

Where plaintiff's contract for the purchase of land rested wholly in parol, and there was no evidence that he had made valuable improvements or even resided· thereon, he was vested neither with a legal nor an equitable title to sustain a claim to homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 114–118; Dec. Dig. ⟫81.]

2. FRAUDS, STATUTE OF  ⟫158 — PAROL AGREEMENT FOR SALE OF LAND—CHANGE OF POSSESSION AND IMPROVEMENT—BURDEN OF PROOF.

One relying upon a parol contract for the sale of land has the burden to prove the facts, such as change of possession and improvements, that take the case out of the statute.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 373–376; Dec. Dig. ⟫ 158.]

3. FRAUDS, STATUTE OF  ⟫129 — PAROL AGREEMENT FOR SALE OF LAND—EXCEPTION TO STATUTE—REQUISITES.

. The· improvements upon premises by a purchaser, relied upon to take a parol contract for the sale of land out of the statute of frauds when there has been a change of possession, must be of substantial value and in excess of the value of the use of the property for the period in question.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 310–312, 314, 318–320, 322, 323, 325, 326; Dec. Dig. ⟫129.]

4. VENDOR AND PURCHASER  ⟫253—VENDOR'S LIEN—ASSIGNMENT OF LIEN.

Where plaintiff, in possession of land under a parol contract of purchase that had vested him neither with legal nor equitable title, gave a note in consideration of receiving a deed, the vendor's lien recited in the note was good, since plaintiff had no title to the land save through the transaction in which it was given, and the lien was a valid incumbrance in the hands of the note's assignee which should have been fore-

closed on cross-petition against plaintiff seeking to remove a cloud on title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 637–640; Dec. Dig. ☞253.]

5. PLEADING ☞67 — FACTS ALLEGED AND NOT DENIED TAKEN AS CONFESSED — ADVANCE DENIAL OF ALLEGATIONS OF CROSS-PETITION.

Under Acts 33d Leg. c. 127, § 4, amending Rev. St. 1911, art. 1902 (Vernon's Sayles' Ann. Civ. St. 1913, art. 1902), and providing that facts not denied by defendant in his answer shall be taken as confessed, vague averments of plaintiff in his original petition as to some unspecified, unlawful claim being asserted by defendant against the land in question, are not such an advance denial of specific allegations in defendant's cross-petition regarding an unpaid note given by plaintiff in payment for the land and reciting a vendor's lien, as to prevent the facts in the cross-petition, otherwise unanswered, being taken as confessed and rendering proper the foreclosure of the lien reserved in the note upon the land.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 139; Dec. Dig. ☞67.]

Appeal from District Court, Bowie County; W. T. Armistead, Judge.

Action by James Vaughan against E. T. Page and others, in which defendants filed a cross-petition. Judgment for defendants for insufficient relief, and defendant named appeals. Reformed and affirmed.

C. A. Wheeler, of Texarkana, for appellant. Chas. S. Todd, of Texarkana, and Louis E. Elkins, of Dyer, Tenn., for appellees.

HODGES, J. The appellee James Vaughan instituted this suit for the purpose of removing a cloud from his title to a tract of land which he describes as the east half of 160 acres situated in Bowie county. He pleads as evidence of his title a conveyance to him from Durant Whaley, executed October 10, 1910. The petition, after describing the land, is as follows:

"Plaintiff states that the defendants, Durant Whaley, E. T. Page, and W. K. Cameron, are wrongfully setting up an unlawful claim to or against said land, and are disturbing the plaintiff in his peaceable possession and enjoyment thereof, and threatening him with eviction therefrom, to his great injury and annoyance and damage, to wit, in the sum of $2,000, which amount the plaintiff alleges to be the value of said land and the value of permanent improvements made and placed thereon by the plaintiff. Wherefore plaintiff sues and prays for judgment quieting plaintiff in his possession of said land and removing all clouds therefrom; that all said defendants be required to account to plaintiff for all moneys, stock, and cotton that plaintiff has turned over to them or that they have taken, and for damages," etc.

The amended original petition, from which this extract is taken, was filed May 19, 1913. Previous to the filing of this pleading, W. K. Cameron, one of the parties mentioned above, filed a disclaimer; but Whaley made no defense. E. T. Page, the appellant, answered by a general denial and a plea of not guilty. He also, by way of cross-action, alleged that on the 10th day of October, 1910, Whaley sold to the plaintiff the premises described in his petition; that in consideration of that sale the plaintiff and one P. Thomas executed and delivered to Whaley their promissory note for the sum of $155.84 as the purchase price of the land, due one year after date, in which note a vendor's lien was retained to secure its payment; that the deed of conveyance executed by Whaley to the plaintiff provided for a retention of the vendor's lien; and that the deed should become absolute only upon payment of this note. It was further alleged that this note was transferred by Whaley to Page for a valuable consideration before maturity; that it is now due and unpaid except to the extent of certain credits mentioned. He asked for a judgment against Thomas and the plaintiff for the amount of the note, principal, interest, and attorney's fees, and for a foreclosure of the vendor's lien upon the premises described in the plaintiff's petition. This answer and cross-bill appear to have been filed March 23, 1914. To this pleading no reply of any kind was filed. Upon a trial before the court, a personal judgment was rendered in favor of Page, the appellant, against Vaughan and Thomas for the balance due on the note; but the court refused to foreclose the lien on the land. Judgment was entered in favor of Vaughan quieting his possession. Page alone has appealed, and assigns as error the refusal of the court to foreclose the vendor's lien asserted by him. The court filed no findings of fact or conclusions of law, and we must look to the evidence in order to determine the grounds for this ruling.

In making out his case, the appellee, plaintiff below, introduced in evidence a deed to himself from Whaley, which recited that:

It was executed "for and in consideration of the sum of $155.84 to be paid by James Vaughan, as evidenced by the note of the said James Vaughan of the same date, of the county of Bowie and state of Texas, the receipt of which is hereby acknowledged, etc. * * * The above amount of $155.84 being due for advances. This deed is made with the understanding that said James Vaughan is to pay said amount from the rent off the land herein conveyed, and at the time said amount is paid in full this deed shall be come absolute."

In his testimony, Vaughan admits that he made the note referred to in this deed, and it is nowhere denied that this is the same note which Page holds and sues on in his cross-action. According to Vaughan's testimony, he first went into possession of this tract of land in 1903 under a verbal contract of purchase from Cameron, who at that time was the owner. He was to pay Cameron $320 as the purchase price. Cameron conveyed the land to Whaley in 1908, and Whaley made the deed referred to above in October, 1910. It appears that, in the interval between the time Vaughan went on the land under his verbal contract of purchase and the making of the deed by Whaley, Vaughan had considerable dealings with both Cameron

and Whaley about other matters, and that he had paid them at different times several hundred dollars on debts which they claimed against him. Taking his testimony as a whole, Vaughan shows that during the time he was having those dealings with Cameron and Whaley he paid them more than enough money to satisfy all debts which they held against him, including the purchase price of the land. But, for some reason which does not clearly appear, no deed was made until October, 1910, and then in consideration of the sum mentioned in the note and deed. Previous to the execution of this deed, Vaughan had let Whaley have some stock. We quote from Vaughan's testimony:

"Whaley took the stock and came back the next year and wanted to try to collect some more for rent. When I signed that paper (what paper does not appear), he came back and wanted to get the rent, and I would not agree to it, and Mr. Page agreed to take up that $155.-84, and he kept on until I just agreed to pay it all. I did not really think I owed that money. Although it says it was given for advances, he really did not advance me anything. * * * I just signed it because I thought I would go ahead and pay that and would not have to bring it to court. I got the deed when I signed that paper."

This is probably the most explicit and intelligible of any portion of Vaughan's testimony regarding this transaction. Neither Whaley nor Cameron testified. The note was offered in evidence, and shows upon its face that it was given as alleged as the consideration for the purchase of the tract of land described in Vaughan's petition. Page testified that on the day the note was executed it was transferred to him by Whaley, for which he gave his check to Whaley for the full amount of the note. He also corroborates Vaughan in saying that, although the note recites advances, none were in fact made.

In his testimony, but not in his pleadings, Vaughan claimed this land as his homestead. We gather from the argument of counsel that the lien was resisted upon that ground, the contention being that the note was not a part of the purchase price of the land.

[1-3] We may even concede that Vaughan had paid for the land all that he agreed to pay, and had fully complied with his contract of purchase in every respect; yet, according to his own testimony, he had neither a legal nor an equitable title to the land. His contract rested entirely in parol, and there is no evidence that he had made any valuable improvements on the land. He does not even say positively that he resided upon it. He says he cleared up the land and had cultivated it since 1903. There is nothing to indicate the extent or value of the improvements made. The value of the use of the land may have far exceeded the cost of clearing. These facts are not sufficient to invest him with an enforceable equitable title necessary to sustain a prior homestead claim. Bradley v. Owsley, 74 Tex. 71, 11 S.

W. 1052; Ann Berta Lodge v. Leverton, 42 Tex. 18; Robertson v. Simpkins, 61 Tex. 261; Bringhurst v. Texas Co., 39 Tex. Civ. App. 500, 87 S. W. 893; Cobb v. Johnson, 101 Tex. 440, 108 S. W. 811. In the Bringhurst Case, cited above, Justice Gill lays down the essentials required to take a parol contract for sale of land out of the statute of frauds:

"First, the minds of the parties must have met in an oral agreement to sell; second, the purchase money must have been paid, and possession delivered by the vendor to the vendee; third, on the faith of the transaction the vendee must have made valuable improvements upon the property."

In the last case referred to, it is held that one relying upon a parol contract for the sale of land has the burden of proving the facts that will take the transaction out of the statute of frauds. It is also there held that the improvements must be of some substantial value and in excess of the value of the use of the property. This ruling, however, is but a reiteration of a well-established doctrine in this state.

[4] If it be true that Vaughan had neither a legal nor an equitable title to this land prior to the execution of the deed by Whaley, there is no basis for the homestead claim, even if it be admitted that the original contract price had previously been paid. Under the facts stated, the note was in fact the consideration for the sale of the land, and the lien was therefore a valid incumbrance which should have been foreclosed.

There is another reason why we think this judgment should not stand without a foreclosure of the lien set up by the appellant. It will be observed that the cross-action by Page was filed after the amendatory act of 1913 became effective, which requires specific denials on the part of the defendant of all the facts alleged in a plaintiff's petition. As to the right to recover upon this note and to the foreclosure of the vendor's lien, Page was a plaintiff and Vaughan a defendant, as those terms are used in the statute relating to pleadings. Article 1902, as amended, reads as follows:

"The defendant in his answer shall plead to each fact alleged in the plaintiff's petition, and either admit or deny the same, or deny that he has any knowledge or information thereof sufficient to form a belief. And any fact not denied by the defendant or which he does not deny that he has any knowledge or information thereof sufficient to form a belief, shall be taken as confessed." Acts of 1913, page 256 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1902).

[5] We do not think the vague and indefinite averments as to some unnamed unlawful claim to or against the land set out the original petition of Vaughan should be treated as an advance assault upon the validity of the note in question, or the lien which it evidenced. Unless the petition can be so construed, then the averments in the cross-action must be taken as admitted, and with such admissions the court could not refuse the foreclosure of the lien pleaded.

The judgment of the district court will

therefore be reformed so as to include an order foreclosing the lien in favor of the appellant.