WEBB et al. v. CITY OF FORT WORTH for Use of WEST TEXAS CONST. CO.
(No. 12208.)

Court of Civil Appeals of Texas. Fort Worth. Nov. 23, 1929.

Rehearing Denied Jan. 18, 1930.

BUCK, J. The city of Fort Worth sued, for the use and benefit of the West Texas Construction Company, B. R. Webb, Jr., and Mrs. L. I. Webb, his mother, a widow, for paving done on Pembroke drive and in front of a house owned by B. R. Webb, Jr., and occupied by Mrs. L. I. Webb. It was alleged that all the requisites for fixing a lien of the premises for the payment of the paving were complied with, and that the paving was done, and that the defendants had failed and refused to pay therefor.

Defendants alleged that the amount of the indebtedness claimed by plaintiff was below the jurisdiction of the district court, being for $183.60, and therefore pleaded to the jurisdiction of the trial court. The defendants further pleaded that the contract by the city of Fort Worth with the West Texas Construction Company was for the paving of a number of streets in Cheltenham addition, and that the construction company did not complete said contract, and only paved Pembroke drive. Therefore the defendants pleaded that, the contract not having been completed, they did not owe anything to plaintiff. They further pleaded that B. R. Webb, Jr., had given the place to his mother as a homestead, and that she had homestead rights therein. It was further pleaded that a hearing on the protest of the defendants was denied the defendants, and therefore the assessment was not legal.

The defendants' plea in abatement and to the jurisdiction of the court, and also their general demurrers and special exceptions were overruled by the trial court, to which they excepted. After the evidence was all in, the court gave a peremptory instruction to find for plaintiff against B. R. Webb, Jr., with a foreclosure of the lien on lot 15, block 1, Cheltenham addition to the city of Fort Worth, and upon the verdict rendered by the jury in accordance with certain instructions, the court entered its judgment against B. R. Webb, Jr., for the $183.60, with foreclosure of the plaintiff's paving lien on the premises involved. From this judgment the defendants have appealed.

Opinion.

The city commission advertised for bids on the paving of Odessa street, Patton court, Warner road, Benhall court, Dartmoor court, Berkeley place, and Pembroke drive. The amount of paving for which advertisement was made on the several streets or drives was set out in such notice to the contractors. On the 10th day of October, 1924, notice was given to the property owners on Pembroke drive to be and appear before the city commission of Fort Worth on October 21, 1924, to show cause why the assessment for the paving in front of the property of those liv-

Ike A. Wynn and James B. Watson, both of Fort Worth, for appellants.

W. W. Wilkinson, Goree, Odell & Allen, and R. E. Rouer, all of Fort Worth, for appellee.

ing on or along said drive should not be made. In this notice it was stated that the West Texas Construction Company had entered into a contract with the city of Fort Worth for the construction of said improvements, and that said contract had been duly approved by the board of commissioners and executed as·required by the city charter, and that said construction company had ˙executed an approved security and filed the same with said board of commissioners. Said notice was published for five successive days in the Fort Worth Record, a newspaper of general circulation in the city of Fort Worth. All parties owning property on Pembroke drive were notified to appear before the commissioners at said time and place, when a hearing would be given them concerning all matters set forth in the resolution. Notice to the contractors was given for the paving of Pembroke drive, and the statement was made in said notice that all bids must be filed with the city secretary on or before 9 o'clock a. m. Tuesday, August 12, 1924; that each bid must be accompanied by a certified check on some bank in the city of Fort Worth in the sum of 5 per cent. of the amount bid,.made payable to the auditor of the city of Fort Worth; that bond in accordance with said specifications must be furnished by the successful bidder. Hence it appears that before the time of hearing the protest before the city commission, the ·paving to be done was limited to Pembroke drive, and that a contract was entered into with the West Texas Construction Company for the paving of Pembroke drive alone. Notice was given to the abutting property owners that Pembroke drive alone was to be paved.

In Berwind v. G. & H. Investment Co., 20 Tex. Civ. App. 426, 50 S. W. 413, writ of error refused, it was held where the city council, by resolution, provided for construction of sidewalks forming a continuous system, it had no right to accept a part performance, leaving intervening spaces of greater or less extent between the portions of the sidewalk; that where a city contracts for a continuous line of sidewalk, and accepts the construction only of a portion thereof, with intervening spaces unpaved, the contractor cannot recover thereon on a quantum valobat, or for any benefit that may accrue to abutting property owners, the action of the council being void.

In the cited case it is stated that the resolution of the city council declaring the necessity for the sidewalks stated that the streets were adjacent to each other, and a continuous and connected system of sidewalks was provided for. The council authorized the mayor to advertise for bids for construction of the work as provided for in the resolution. The contract was executed, also in accordance with the resolution. The court properly says that a property owner might be willing to pay for assessment for the construction of a continuous sidewalk, while he would not be willing to pay for a pro rata part of a sidewalk which was not continuous and had skips in it. We think that this case and the other cases cited by appellants are easily distinguishable from the instant case.

The Charter of the city of Fort Worth, being section 5 of chapter XIV of the city charter in force at that time, provides: "Bids shall be filed with the Board of Commissioners, and opened and read in open meeting thereof. Said Board may accept such bid or bids, as it may deem most beneficial to the city, and the owner of the property abutting the proposed improvement, or may reject any and all bids, and may accept different bids for parts of the improvement and accept such bid or bids on different plans, or methods, or for different materials, as it may deem best. No bid shall be amended, revised or changed after being filed."

■ The contract under which the work was done provided that the contract was separate as to each street to the same extent as if separate instruments had been executed for each street and separate assessment proceedings had for each street. We do not think that in overruling the assignment directed to the failure of the city to have all of the streets named in the first resolution paved, but the city having contracted with the West Texas Construction Company to pave Pembroke drive alone, such facts make this case subject to the ruling of the Galveston Court of Civil Appeals in Berwind v. G. & H. Investment Co., supra. Therefore such assignment is overruled.

■ Nor do we think that Mrs. L. I. Webb had any homestead rights in the premises. Mr. Webb testified that the title to the property was in his name; that he was a married man and owned a home in San Antonio; that he purchased this house as a home for his mother, and that she lived in the house with her maiden daughter; that she agreed to pay the taxes, the insurance, and the repairs on the premises; that his mother owned other property in the city of Fort Worth consisting of houses and lots, etc., and was financially able to buy a home for herself, and under certain conditions was financially able to support herself from the revenues and rentals of the other property. Upon a contract being sent to B. R. Webb, Jr., at San Antonio, for the paving, he wrote to an officer of the construction company that while he owned the property, his mother lived thereon, and he would leave the matter of whether or not the improvement should be had to her and her neighbors. Under express statutory provision in some states a person, owning and occupying a dwelling and other improvements on land of which he is rightfully in possession under a lease for a term of years, may claim the premises as his homestead. 29 C. J. 847, § 159. See Texas authorities cited under note 69. But in the instant case, there is no

pretense that Mrs. Webb had any lease on the premises she occupied for a term of years. At most, she had the right of tenancy at will. At any time, B. R. Webb, Jr., had the right to dispossess her and retake possession of the property. Therefore we conclude that there were no homestead rights shown to be vested in Mrs. L. I. Webb such as would preclude the enforcement of the paving lien against the premises.

 It is also contended that the evidence of some of the witnesses is that the city commission had advised them to be present at 9 o'clock a. m., October 21, 1924, for the purpose of urging any protest against the paving, and that a Miss Burchill testified that she lived at that time at the Texas Hotel, and left the hotel at a quarter of 9 o'clock and arrived at the city hall in a very short time. That there was an enormous crowd there, and she asked Mr. Burton, whom she had always known and who was mayor at that time, if she could not appear before the body, and he asked her what for, and she said she wanted to protest the paving of Pembroke drive, and he said that that matter was already passed. That this was at 9 o'clock in the morning. The minutes of the council show that the city commissioners met in regular session on October 21, 1924, at 9 o'clock a. m. This is a collateral attack on the action of the city council. See Glenn v. Dallas County Bois D'Arc Island Levee Dist., 282 S. W. 339, by the Dallas Court of Civil Appeals, 275 S. W. 137; and the same case by the Commission of Appeals in 288 S. W. 165. A homestead interest cannot be claimed under parol gift unless the facts exist which would vest title in the donee. Elam v. Carter, 55 Tex. Civ. App. 649, 119 S. W. 914; Page v. Vaughan (Tex. Civ. App.) 173 S. W. 541; Leonard v. Cleburne Roller Mills Co. (Tex. Civ. App.) 229 S. W. 605. In Ryan v. Lofton (Tex. Civ. App.) 190 S. W. 752, 755, it is said: "While in many, if not most, of the states having the same or similar statutory adoption of the English statute of frauds, enacted in 1676 (29 Car. LI, c. 3, § 1), courts of equity have been very liberal in construing such statutes and in giving relief, yet our own courts have seemingly been loath to depart from the somewhat rigorous terms of the statute. This conservative sentiment was voiced in the opinions of Chief Justice Hemphill and Associate Justice Lipscomb in one of the leading cases on this question. Garner v. Stubblefield, reported in 5 Tex. 552. Early in our judicial history, however, the Supreme Court of Texas modified the statutory inhibition, by enforcing specific performance of a parol contract to convey land where valuable improvements had been made by the vendee or donee, with the knowledge and consent of the vendor or donor."

We think in this case both B. R. Webb, Jr., and Mrs. L. I. Webb, by their statements made to the West Texas Construction Company, conclusively showed that it was not the intention of B. R. Webb, Jr., to make a parol gift of the property to his mother, but merely to give her the right of use thereof at will. We think that in view of the minutes of the proceedings of the city commission that the commission met that day at 9 o'clock, and in view of the presumption that always obtains in favor of the correctness of such quasi judicial bodies as the city commission, that the trial court did not err in instructing a verdict for the plaintiffs.

Therefore the judgment of the trial court is affirmed.

### On Appellant's Motion for Rehearing.

Appellant vigorously attacks the conclusion reached in our original opinion, and cites a number of cases which it is claimed hold that such an attack as herein involved is a direct attack and not a collateral attack. The only pertinence of whether the attack is collateral or direct is involved in consideration of the question as to whether the citizens whose property was sought to be taxed and against whose property was sought a levy to pay for the paving had opportunity to protest against the paving. We think there is no doubt that neither Mrs. L. I. Webb nor B. R. Webb, Jr., had any homestead interest in the property sought to be taxed, as shown in our original opinion. In Glenn v. Dallas County Bois D'Arc Island Levy District, 114 Tex. 325, 268 S. W. 452, the Commission of Appeals, speaking through Justice Stayton, held that the judgment of the levy board in the sphere of its jurisdiction is as immune from attack as the judgment of a court of general jurisdiction. In Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325, 328, the question as to whether an injunction suit was a direct or collateral attack was not involved. The suit was an action of trespass to try title in which the plaintiff relied on certain probate orders through which he deraigned title. The orders were fair on their face, but the defendant sought to impeach them by proving dehors the record that the sale was not made at the proper place. The court said: "The question, then, is, can this judgment of confirmation of sale, rendered by a domestic court of general jurisdiction of estates of decedents, in a matter to which its jurisdiction had attached by the granting of an application for an order of sale in a pending administration, be attacked by evidence of matters dehors the record?"

The court holds that the orders of a probate court are entitled to the same protection as the orders and judgments of any other court; that the attack was collateral in its nature and under well-recognized rules of law could not be so made. By way of illustration, the court mentions the different ways that a judgment may be attacked and incidentally

alludes to an injunction. Since an attack by injunction was not involved in the cited case, the court did not attempt to point out when or under what circumstances such an attack could be made, but evidently had in mind an attack on a judgment void for want of jurisdiction like that of Gulf, C. & S. F. Ry. Co. v. Rawlins, 80 Tex. 579, 16 S. W. 430, a judgment of a justice court where there was no appeal. The expression upon which appellant relies was not elaborated, because not involved in the suit and evidently had reference to those somewhat rare instances where the Supreme Court had theretofore discussed the question, and those cases are limited to instances where the judgment was absolutely void. The recent case of Brown v. Clippinger, 113 Tex. 364, 256 S. W. 254, opinion by Justice Greenwood, shows how sparingly the Supreme Court allows injunctive relief and the strict showing required of one seeking such relief.

McMickle v. Rochelle, 59 Tex. Civ. App. 91, 125 S. W. 74, is relied on by appellant. The purpose of that suit was to vacate and set aside the judgment attacked and to enjoin the sale under an order of sale issued on the judgment and which had been levied by the sheriff on certain property of the complainant. Thus the primary purpose of the suit was to open up and vacate the judgment and the injunction was but ancillary. The suit was filed in the court that had rendered the original judgment, and every element of a direct attack was present. Plaintiff owned certain property in the city of Texarkana upon which he resided. He rendered this property for taxes and paid the taxes thereon. There was a double assessment of the property, and suit was brought on the taxes alleged to be delinquent under the erroneous assessment, and McMickle was sued as an "unknown" owner and cited by publication in violation of the statute. McMickle knew nothing about this judgment for taxes until the property was advertised for sale, whereupon he sued to set aside the judgment, setting up the facts that there was no basis for the judgment, the lack of jurisdiction of the court, and seeking injunction pending the determination of his main suit. We think in this case there was a meritorious defense shown and every essential to a direct attack made, and that the injunctive relief was purely incidental.

In Dashner v. Wallace, 29 Tex. Civ. App. 151, 68 S. W. 307, by the San Antonio Court of Civil Appeals, the plaintiff was a minor when the original judgment was taken against him, and had no knowledge of its existence until years thereafter when an execution was levied on his property and when a writ of garnishment was levied on a company in which he was interested. In his petition he showed that the original judgment was absolutely void for want of jurisdiction and that he had a meritorious defense to the original

suit. If the effect of the Dashner Decision is to hold that a plain injunction suit is necessarily a direct attack on a judgment, such ruling is repudiated by the same court in Texas Central R. Co. v. Hoffman, 193 S. W. 1140, 1142, where the court held that a suit having for its purpose merely to enjoin the execution of a judgment, and not seeking to open up the judgment or to set it aside, is a collateral attack. Chief Justice Key, speaking for the court, said:

"This motion has been given careful consideration, and our conclusion is that it should be overruled. We do not concur in the contention of appellant's counsel that this suit constitutes a direct and not a collateral attack upon the judgment formerly rendered by the court against appellant.

"It is true that appellant brought this suit for the purpose of obtaining a writ of injunction to restrain appellee from enforcing the former judgment, and it is also true that in Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325, our Supreme Court, in undertaking to define what constitutes a direct attack upon a judgment, included in the definition 'an injunction to restrain its execution,' etc., but that was not an injunction suit, and therefore that statement was not necessary to a decision of that case, and is not binding as authority. However, when an independent suit is brought for the purpose of having a former judgment set aside, and the case restored to the docket and retried, such a suit constitutes a direct attack upon the judgment, although the plaintiff may also ask for a writ of injunction restraining the defendant from seeking to enforce such judgment. But when, as in this case, the plaintiff brings his action solely for the purpose of obtaining a writ of injunction to prevent the enforcement of the former judgment upon the ground that such judgment is absolutely void, because of the fact that he was not served with citation, and did not appear or otherwise waive such service, and does not ask to have the judgment set aside and the case retried upon its merits, such a suit, in our opinion, is not a direct but a collateral attack upon the judgment, and when, as in the instant case, such judgment recites upon its face that the defendant was duly served, then in such collateral attack such recital is conclusive, and evidence will not be heard to impeach it."

The court further quotes from Black on Judgments to show that the attack made in that suit on the judgment was a collateral and not a direct attack.

The Hoffman Case is cited with approval by this court in Southern Surety Co. v. Texas Oil Clearing House, 266 S. W. 529, affirmed by the Supreme Court in 281 S. W. 1045; and by the San Antonio Court of Civil Appeals in the case of Oetting v. Mineral Wells Crush Stone Co., 262 S. W. 93.

.In Moore v. Miller (Tex. Civ. App.) 155 S. W. 573, also relied on by appellant, there was an attack on a sale made under a judgment for fraud and irregularities in connection with the. sale and inadequacy of consideration. The court specifically points out that the attack was upon the sale and not upon the judgment. The plaintiff recognized the judgment and offered to pay it off.

Patrucio v. Selkirk (Tex. Civ. App.) 160 S. W. 635, writ of error refused, is cited by appellant apparently on the point that in an appropriate way an attack may be made on a judgment by a cross-action.

In Brown v. Clippinger, 113 Tex. 364, 256 S. W. 254, 255, heretofore cited, the court said:

"In the early decision of Witt v. Kaufman, 25 Tex. Supp. 386, in a proceeding to enjoin the execution of a judgment of a justice of the peace, which was declared void as against one over whose person the court had not acquired jurisdiction, it was said: 'But the court, having obtained cognizance of the case for one purpose, would retain it for the further purpose of doing full and complete justice between the parties, and would give judgment for the plaintiff upon the cause of action on which the judgment of the justice was rendered, if, upon the merits, the plaintiff was entitled to judgment. Such is the practice as settled by the decisions of this court.'

"The rule is shown to be founded on common sense and reason by the opinion of Chief Justice Roberts in House v. Collins, 42 Tex. 493, stating that it would be useless for a court of equity to set aside one judgment when the principles of equity would require another adjudication of like import.

"In the case of Piggott v. Addicks, 3 G. Greene (Iowa) 429, 56 Am. Dec. 547, it is said: 'The door of equity is only open to such as have been or may be injured, and, before chancery will take jurisdiction, the injury sustained or apprehended should be clearly set forth in the petition.'

"Speaking of injunctive relief to which one is entitled from a judgment without notice, in Hamblin v. Knight, 81 Tex. 355, 26 Am. St. Rep. 818, 16 S. W. 1082, the court said: 'In every case where such relief is sought by injunction it should be done without delay, or if from any cause delay exists it should be accounted for and excused, *in addition to which it must be shown that the party has a meritorious defense to the action.*' Sharp v. Schmidt & Zeigler, 62 Tex. 265, and Owens v. Cage & Crow, 101 Tex. 289, 106 S. W. 880, are to the same effect."

In the instant case plaintiff in his petition did not allege that the judgment of the board or city commission was absolutely void, but only voidable. The charter of the city of Fort Worth provides for notice to the property owner sought to be taxed, and a hearing granted. This notice shall declare the necessity of assessing any part of the cost of proposed improvements against such owner, and shall be served by publishing same for five successive days in some newspaper published in said city and mailing copy thereof by registered letter to the address of each owner, if known, but if not known to the address of his agent or attorney, if known. Under this provision of the charter, it could not be successfully claimed that any abridgement of the right of the citizens sought to be taxed to appear before the board of commissioners or the city council, for the purpose of protesting the levy of any certain tax against them, would make the action of the said board or city council void, but at most it would be merely voidable. Chapter XIV, section 8, of the City Charter, further provides that the property owner, if he has any objection to such assessment, or to the making of such improvement or complains of any invalidity or irregularity in the proceedings with reference thereto, or any other objection, that he shall file his objections in writing, and that thereafter the board of commissioners shall hear and determine the same, and that the objections to the regularity of any proceedings by the board of commissioners shall be held to be waived unless presented at the time and in the manner specified in this section of the charter. In the instant case, the charter provisions as to the means of preserving the right of objection was not followed by either of the appellants in this case or any of the property owners. Therefore we conclude that the effort of the appellants to set aside and hold for naught the judgment of the city commission or city council is a collateral attack and not a direct one.

The motion for rehearing is overruled.