T. M. CAMPBELL, RECEIVER, v. ED. B. WIGGINS, TAX COLLECTOR, ETC.

No. 1.

1. **Certificate of Dissent — Jurisdiction.** — This court has no power to revise any question on which the judges of the Court of Civil Appeals concur when the case is in this court upon certificate of dissent as to other questions. Its jurisdiction only extends to the question or questions upon which there is dissent.

2. **Practice in Case of Dissent in Court of Civil Appeals.** — The certificate of dissent brings the question before the Supreme Court for a full hearing from both sides upon the questions of nonconcurrence, without the intervention of a writ of error. Acts 1892, p. 31, secs. 32–34.

3. **Exemption from Taxation — Statute Construed.** — The Act of March 10, 1875, does not exempt from taxation any property not exclusively acquired by virtue of the charter of the International Railway Company. Money deposited in a bank by the receiver of the International & Great Northern Railway Company, it not being shown to have been acquired exclusively under the charter of the International Railway Company, is not exempt from taxation under said act.

4. **Proviso — Construction of Statutes.** — A proviso in a statute is generally intended to except something which would otherwise have been within it. The words, " Provided, that nothing in this act contained shall be construed to exempt from taxation * * * any property acquired, or hereafter to be acquired, by virtue of the charter of the Great Northern Railway Company," are not of doubtful meaning. They contain an affirmative declaration that the acquisitions of the company (the International & Great Northern Railway Company) through the latter charter were not to be included in the exemption.

**5. International & Great Northern Railway Tax Exemption.—** Independent of the proviso, it does not affirmatively appear that the gains from the Great Northern Railway Company charter were exempted from taxation under the compromise act granting exemptions to the consolidated International & Great Northern Railway Company. See discussion of the several statutes touching the rights of the International & Great Northern Railway Company.

THIS was an appeal from Smith. In the Court of Civil Appeals, First District, the judgment was affirmed by a majority of the judges. A dissenting opinion, however, was filed. The certificate of dissent is as follows:

"Upon motion of the appellant in this cause, the point of the dissent of the Hon. H. Clay Pleasants, Associate Justice, in said cause is hereby certified to be as follows, which will more fully appear by the certified copies of the opinion of the court and the dissenting opinion:

"The question arose as to the liability of the International & Great Northern Railway Company for taxes assessed against money in the hands of the appellant as receiver of said company, which, as alleged in the petition for injunction, 'was money earned by the International & Great Northern Railway Company, and not acquired by virtue of the Great Northern Railway Company, or the Houston & Great Northern Railway Company,' and was therefore exempt from taxation by the Compromise Act of 1875.

"The majority of the court held, that the exemption from taxation made by said act was not personal to the International & Great Northern Railway Company, but applied only to the property mentioned in said act, and that as it was not shown that the money, or a part of it, was not earned by the operation of the line of railway constructed in accordance with the charter of the Houston & Great Northern Railway Company, or the Great Northern Railway Company, by the International & Great Northern Railway Company, the exemption was not shown.

"Judge Pleasants is of the opinion, that the exemption was personal to and of the International & Great Northern Railway Company as a corporation, as well as of the property enumerated in said act, with the exception as stated, and hence that the earnings of all of the lines were exempt.

"It is ordered, that the clerk of this court certify to the Honorable Supreme Court, now in session at Austin, a copy of this order, and of the opinion and dissenting opinion in this case, as well as of the judgment of the court below.

"Filed January 26, 1893."

The opinion sufficiently shows the facts and matters discussed.

*John M. Duncan,* for plaintiff in error, appellant in Court of Civil Appeals.

GAINES, ASSOCIATE JUSTICE.—This case comes to us upon a certificate of dissent from the Court of Civil Appeals of the First Supreme Judicial District.   It is a suit brought by T. M. Campbell, as receiver of the International & Great Northern Railway Company, against Ed. B. Wiggins, as tax collector of Smith County, in which the plaintiff seeks to enjoin the defendant from collecting taxes assessed upon money deposited by the plaintiff as receiver in a certain bank in Tyler.   The claim is, that the money is exempt from taxation by virtue of the Act of March 10, 1875, entitled "An act for the relief of the International Railroad Company, under the name of the International & Great Northern Railroad Company."

Two prominent questions were passed upon by the Court of Civil Appeals, and have been discussed at bar.

The case was determined in the trial court upon a demurrer to the petition and a trial amendment.   The trial amendment contained the averment, " that all the money on which this tax is levied was earned by the International & Great Northern Railway, and not acquired by virtue of the charter of the Great Northern Railway Company, or the Houston & Great Northern Railway Company, and is therefore exempt," etc.

Whether or not this is equivalent to an allegation that none of the money was earned by virtue of the Houston & Great Northern charter, is one of the questions which has been discussed before us.   The Court of Civil Appeals, however, resolved that question in the negative, and in that ruling all the judges concurred.   The inquiry therefore presents itself, Have we jurisdiction to revise that ruling upon this appeal?   The proceeding by which this case is brought before us is authorized by the following sections of the Act of April 13, 1892, which provides for the organization of the Courts of Civil Appeals:

" Section 32.   When any one of said Courts of Civil Appeals shall in any cause or proceeding render a decision in which any one of the judges shall dissent as to any conclusion of law material to the decision of the case, said judge shall enter the grounds of his dissent of record, and said Court of Civil Appeals shall, upon motion of the party to the cause, or its own motion, certify the point or points of dispute to the Supreme Court.

" Section 33.   When a certificate of dissent is sent up by any Court of Civil Appeals, it shall be the duty of the clerk to send up a certified copy of the judgment of the court below, of the conclusions of law and fact as found by the court, and the questions of law upon which there is a decision, and the original transcript if so ordered by the Supreme Court; and thereupon, if the Supreme Court shall so direct, the clerk shall set down the same for argument and notify the attorneys of record.

" Section 34.   After the question is decided, the Supreme Court shall immediately notify the Court of Civil Appeals of their decision, and the

same shall be entered as the judgment of said Court of Civil Appeals." Laws 1892, p. 31.

The language of the section last quoted indicates, to our minds, that it was the intention of the Legislature that in a proceeding of this character the Supreme Court should revise only the ruling or rulings in which all the judges of the Court of Civil Appeals did not concur. It is a special provision for a particular class of cases; and it would seem that it was thought that a dissent would leave the matter in such doubt as to justify a departure from the general rule, by allowing an immediate and direct reference of the question to the court of last resort. The certificate of dissent brings the question before the Supreme Court for a full hearing from both sides, without the intervention of a writ of error.

We conclude, therefore, that we must consider the question of pleading as settled by the Court of Civil Appeals, and that we should treat the petition as one which alleged that the money in controversy was not exclusively earned by virtue of the charter of the Houston & Great Northern Railway Company.

This brings us, then, to the second question which has been discussed upon this appeal: Does the Act of March 10, 1875, exempt from taxation any property not exclusively acquired by virtue of the charter of the International Railway Company? Such is practically the question upon which the judges of the Court of Civil Appeals differed in opinion. Its solution depends upon the construction of section 1 of that act. So much of the section as bears directly upon the question reads as follows: * * * "And the said railway company, its successors, and its and their capital stock, rights, franchises, railways, constructed and to be constructed pursuant to said Act of August 5, A. D. 1870, and this act, rolling stock, and all other property which now is or may hereafter be owned or possessed by said company, or its successors, in virtue of said Act of August 5, A. D. 1870, is hereby exempted and released from all state, county, town, city, municipal, and other taxes for a period of twenty-five years from August 5, A. D. 1875, except," etc.; * * * " provided, this exemption from taxation shall not be held or construed to include or apply to the lands or railways which at the time of the consolidation herein before recited belonging to the Houston & Great Northern Railway Company, or which has since been or may hereafter be constructed or acquired under its charter; provided, that nothing in this act contained shall be so construed as to exempt from taxation any lands to which the company may be entitled by virtue of the charter of the Great Northern Railway Company, or the franchise, roadbed, rolling stock, or any property acquired or hereafter to be acquired by virtue of the charter of the Great Northern Railway Company." Spec. Laws 1875, p. 70.

If it be conceded that the word "property" in the exempting clause includes money acquired by the company (and it would seem that the case

of the appellant is founded upon this construction), the same meaning must be applied to the word in the subsequent parts of the section. Money is not exempted by name, and it must be subject to taxation, unless relieved by the sweeping provision which says the company itself is exempt. Therefore if the Legislature designed to exclude from the exemptions the acquisitions which should accrue by virtue of the charter of the Great Northern Railway Company, it is difficult to see how they could have expressed that intention more clearly than it is expressed in the proviso. " Provided, that nothing in this act contained shall be construed to exempt from taxation   *   *   *   any property acquired or hereafter to be acquired by virtue of the charter of the Great Northern Railway Company," are not words of doubtful meaning. They contain an affirmative declaration, that the acquisitions of the company through the latter charter were not to be included in the exemption; and unless they be limited and controlled by other words in the statute, they must be given effect.

Let it be admitted, for the sake of the argument, that the clause which declares the exemption, if it stood alone, would embrace property acquired jointly by the two railroads, or even that acquired exclusively by the Great Northern. Which is to control—that clause or the proviso? The enacting clause directly points out what is to be exempt, but defines what is not exempted by implication only. The proviso goes further, and declares affirmatively that certain property shall not be exempt. In the language of Chief Justice Marshall: " The proviso is generally intended to restrain the enacting clause, and to except something which would otherwise have been within it," etc.   Wayman v. Southard, 10 Wheat., 30.   " The general intent must be controlled by the particular intent subsequently expressed."   Suth. on Stat. Con., sec. 222. The sole purpose of the proviso is to exclude from the operation of the exempting clause what might otherwise be construed to be within it, and the meaning being clear, it must govern.

The discussion might appropriately end here. But we do not wish to be understood as holding that the exempting clause, even when construed without reference to the proviso, relieves the money in controversy from taxation.   Unless that intention was clearly expressed, the purpose and spirit of the statute would seem to forbid that construction. The circumstances which gave rise to its passage are a part of the legislative and judicial history of the State.   Some of them are recited in the preamble to the act itself.

The International Railway Company was chartered by a special act of the Legislature, passed August 5, 1870.   That company subsequently consolidated with the Houston & Great Northern Railway Company. The consolidated company claimed that under the provisions of the charter of the International Railway Company it was entitled to receive the bonds of the State to the amount of $10,000 for each mile of railway constructed

under that charter.  A fact that does not appear in the preamble is, that by virtue of the Act of August 5, 1870, incorporating the International Railway Company, "the capital stock and property of said company" are declared exempt from the payment of all taxes for the period of five years from the passage of the act.  Spec. Laws 1870, p. 109.  By their consolidation the two companies became one.  They acquired no new right as against the State or any individual, except to operate their railways and to enjoy their property and franchises under one management and for the joint benefit of their respective stockholders, under such terms as may have been agreed upon.

The consolidated company—the International & Great Northern Railway Company—succeeded to all the rights of the International Railway Company, and therefore became a necessary party to any agreement intended to settle conclusively the claims of that company.

The controversy concerned rights which were claimed under the International charter.  A claim which grew out of that charter was alone to be adjusted.  The compromise was made with the International & Great Northern Railway Company, because it had succeeded to the rights of the International Railway Company; and it is reasonable to suppose that the Legislature intended to make the adjustment precisely as it would have been made with the latter corporation, provided no consolidation had taken place.

The language, "and the said railway company, its successors, and its and their capital stock, rights, franchises, railways, constructed and to be constructed pursuant to said Act of August 5, A. D. 1870, and this act, rolling stock, and all other property which now is or may hereafter be owned or possessed by said company, or its successors, by virtue of said Act of August 5, A. D. 1870, is hereby exempted," may seem to indicate that something more than assets specifically mentioned were to be freed from taxation.  But it may be the object in naming the company itself as being exempted was to prevent an indirect tax of the International property, by the imposition of a burden in the nature of an occupation or other like tax.  The capital stock of the consolidated company was also relieved from taxation for a like reason.  A tax upon it would have been a tax upon the entire property represented by it—that is to say, a tax upon the property of both companies, which were united by the consolidation.

Or it may be that exempting clause was intended to be construed as if it read, "and the said company and its successors shall be exempted as to its capital stock, rights, franchises, railways, constructed and to be constructed pursuant to said Act of March 5, A. D. 1870."

At all events, in view of the manifest purpose of the act, we think, that in the absence of language clearly expressing a contrary intention, it should not be construed to exempt any property or money acquired by virtue of the Great Northern Railway Company's charter.

We conclude, that the opinion of the majority of the Court of Civil. Appeals upon the question presented is correct, and that the judgment. should be affirmed.    And it is so ordered.

*Affirmed.*

Delivered February 27, 1893.