## GLENN v. DALLAS COUNTY BOIS D'ARC ISLAND LEVEE DIST.   (No. 9050.) *

(Court of Civil Appeals of Texas. Dallas. Jan. 30, 1926. Rehearing Denied March 13, 1926.)

**1. Courts ⬚247(5).**

Court of Civil Appeals may dispose of all questions not certified to Supreme Court as though no certification had been made, in view of Rev. St. 1925, art. 1851.

**2. Pleading ⬚34(3)—Petition construed favorably to sufficiency as against general demurrer.**

In testing sufficiency of plea challenged by general demurrer, every material allegation and reasonable intendment arising therefrom must be accepted and given effect as true.

**3. Constitutional law ⬚61—Laney Act, in authorizing commissioners' courts to appoint commissioners of appraisement of levee districts, held not unconstitutional as authorizing court to create another court (Laney Act [Rev. St. 1925, arts. 7972–8042]).**

Laney Act (Rev. St. 1925, arts. 7972–8042), authorizing commissioners' courts to appoint

commissioners of appraisement of levee districts (article 7991) *held* not unconstitutional as providing authority to create a court, especially in view of provisions of state Constitution and acts of Legislature providing judiciary.

**4. Levees and flood control ⊂⊃5—Commissioners of appraisement of levee district, appointed under Laney Act, held not "court," but constitute valid special tribunal (Laney Act [Acts 35th Leg. (1918) 4th Called Sess. c. 44] § 56, now Rev. St. 1925, art. 8032).**

Commissioners of appraisement of levee district, appointed under Laney Act, *held* not to constitute court at law, in hearing and determining matters in dispute between litigants, but to be a valid special tribunal, in view of section 56, now Rev. St. 1925, art. 8032.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Court (Of Justice).]

**5. Levees and flood control ⊂⊃2—Laney Act held not invalid as authorizing courts to create levee improvement districts out of territory located in several counties; "county business" (Laney Act [Rev. St. 1925, arts. 7972–8042]; Const. art. 16, § 59).**

Laney Act (Rev. St. 1925, arts. 7972–8042), passed pursuant to Const. art. 16, § 59, *held* not invalid because conferring upon commissioners' courts authority to organize levee district out of territory located in several counties; authority of commissioners' courts over "county business" not being restricted merely to business of county in and for which court was created.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, County Business.]

**6. Levees and flood control ⊂⊃25—Commissioners of appraisement of levee district cannot assess benefits for hill drainage not embraced in plan of reclamation (Laney Act [Acts 35th Leg. (1918) 4th Called Sess. c. 44], §§ 21, 52, 53 [Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½gg, 5584½qqq, 5584½r]).**

Under Laney Act, commissioners of appraisement of levee district cannot assess benefits for hill drainage not included within plan of reclamation, in view of sections 21, 52, and 53 of the act (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½gg, 5584½qqq, 5584½r).

**7. Levees and flood control ⊂⊃25—Action of commissioners of appraisement in assessing benefits is subject to bill of review by court of equity (Laney Act [Rev. St. 1925, arts. 7972–8042]).**

In view that Laney Act (Rev. St. 1925, arts. 7972–8042) makes no provision for new trial or appeal from final action of commissioners of appraisement of levee district, and, commissioners having no power to entertain bill to vacate its own judgment after entering final decree making assessment for benefits, bill of review of such decree may properly be brought in district court having general equitable power and jurisdiction.

**8. Judgment ⊂⊃15.**

Judgment which court is without jurisdiction to render is void.

**9. Judgment ⊂⊃497(1).**

Judgment void for want of jurisdiction cannot be aided by recital that court has jurisdiction.

Jones, C. J., dissenting.

Appeal from District Court, Dallas County.

On motion for rehearing. Motion granted. For former opinion, see 275 S. W. 137.

Lee R. Stroud and Spence, Smithdeal, Shook & Spence, all of Dallas, for appellant.

Crane & Crane, of Dallas, and Goree, Odell & Allen, of Fort Worth, for appellee.

VAUGHAN, J. At a former term of this court, to wit, on the 27th day of June, 1925, an opinion was handed down and judgment rendered on appellee's motion for rehearing, granting said motion, setting aside the judgment, reversing and remanding this cause, and affirming the judgment of the trial court. Appellant's motion for rehearing now before us is addressed to the opinion and judgment rendered June 27, 1925.

Truly, the course of procedure that this cause has been subjected to is, in effect, a recognition of the oft heard statement that has almost, if not quite, become a maxim of the law, to wit, "That no matter in dispute can be said to have been settled until it has been correctly determined."

We do not think it amiss to make the following brief reference to the movements of this cause through the courts: Since leaving the trial court, this cause has meandered its way through the appellate courts as follows: On October 6, 1923, it was reversed and remanded (275 S. W. 137); on October 20, 1923, appellee filed its motion for rehearing; and on October 25, 1923, filed its motion to certify certain questions to the Supreme Court. Motion to certify was granted, and, on January 11, 1924, the following questions were certified:

First question: "Since the allegations of fraud were included only in the supplemental answer filed in response to appellee's first supplemental petition, should they be ignored in considering the general demurrer because they were not embodied in the first amended original answer, or should they be considered as a defense to the cause of action, notwithstanding the pleading which contains them is denominated as a supplemental answer?"

Second question: "Do the commissioners of appraisement constitute a court of special jurisdiction whose findings of benefits to land and whose laying of assessments against it constitute decrees and judgments of a court such as may not be collaterally attacked for fraud?"

Third question: "Since the bonds had already been sold before the suit was instituted, was the purchaser of them a necessary party to the suit under the allegations of the parties?"

Fourth question: "If the commissioners of appraisement do not constitute a court in the sense that their orders and decrees, apparently regu-

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

larly made under the statute, are not to be considered as the judgments of a judicial tribunal, can a suit for the collection of a delinquent assessment, on its face appearing to have been regularly made in conformity with the statutory provisions of chapter 44 of the Acts of the Thirty-Fifth Legislature, be resisted upon allegations of fraud?"

On the 28th of January, 1925, said questions were answered by the Supreme Court as follows: To the first, that the allegations in the supplemental answer are not to be considered by the Court of Civil Appeals as a defense to the cause of action; to the second and fourth, that the alleged defense of fraud was not good; and to the third, that under the allegations and pleas the purchaser of the bonds was not a necessary party, as per opinion by the Commission of Appeals, reported in 268 S. W. 452.

On the 27th day of June, 1925, appellee's motion for rehearing was granted and the judgment of the trial court affirmed. 275 S. W. 141. On the 11th day of July, 1925, appellant filed the motion for rehearing that made necessary the further consideration of this cause, resulting in this opinion.

We think it but just to counsel representing the parties to this cause to here pause long enough to say that in their labors the members of this court were greatly guided, assisted, and benefited by the thorough, comprehensive, and well directed briefs filed in this cause, as well as by the refreshing, tactful, and logical oral arguments that were delivered on the submission of appellant's motion for rehearing under invitation of this court.

[1] The answers of the Supreme Court to the questions certified determined this appeal anent the defense of fraud, on the following matters: (1) That the allegations contained in appellant's first supplemental answer could not be considered by this court as constituting a defense to the cause of action alleged by appellee; (2) that appellant's defense, based upon the allegations of fraud, was insufficient; and (3) that the purchaser of the bonds issued by the appellee district was not a necessary party to this suit. However, as no other question involved in this appeal was certified to or properly embraced within the answers made to the questions certified, this court is at liberty to dispose of the remaining questions as though no certification had been made. Article 1851, Revised Civil Statutes 1925; Campbell v. Wiggins, 21 S. W. 599, 85 Tex. 424; Classen v. Elmendorf, 37 S. W. 1062, 38 S. W. 160, 90 Tex. 204; Eustis v. Henrietta, 43 S. W. 259, 91 Tex. 325; McManus v. Cash & Luckel, 103 S. W. 800, 101 Tex. 261; Snyder v. Baird Ind. School Dist., 111 S. W. 723, 113 S. W. 521, 102 Tex. 4; State v. Duke, 137 S. W. 654, 138 S. W. 385, 104 Tex. 355.

Appellant by his pleadings presented to appellee's cause of action two defenses, to wit, one of fraud, which, under the answers of the Supreme Court to the questions certified, is not now in the cause; and, one of want of jurisdiction and power of the commissioners of appraisement over the subject-matter which they assume to assess, which was not before the Supreme Court in any form for any purpose. This defense is made to rest upon the following allegations contained in appellant's first amended original answer, which, in effect, constitute a cross-action for the purpose of freeing appellant from the liability alleged against him by appellee, to wit:

"Defendant says that not only will such assessment as the plaintiff seeks to enforce and collect in this suit confiscate all the benefits of the said 100' acres of the O. H. Lindsey survey and the land rights, but will confiscate defendant's other lands, which were wrongfully embraced and included within said levee district, but which are not now and will never be benefited by any levee built or contemplated by the plaintiffs; that said other lands have never been subject to overflow from the flood waters from the Trinity river, and do not need the protection of a levy; and the levy erected by the plaintiff and contemplated by it, if any, will not protect or benefit defendant's said other lands; and said appraisements and assessments and levies are unconstitutional because confiscatory as above set forth; * * * that the assessments, appraisements, and levies sought to be enforced and collected herein are invalid and not conclusive, because the appraisers assessed benefits and advantages that they supposed would arise to said lands from improvements not included within the plans of reclamation, to wit, improvements that they supposed would arise from hill drainage, which improvements were beyond the scope of their authority to consider, and which improvements were never made or authorized to be appraised and assessed; * * * that the assessment against defendant's land was made on the theory that defendant's land would be benefited by the digging of a canal which would afford hill drainage to defendant's lands, practically all of which has never been subject to overflow and did not need levees for their protection. And the plaintiff, although the assessment was made against defendant's land on the theory that said benefit from hill drainage would accrue to the defendant, spent all the money derived from the issuance and sale of bonds in the erection of levees, and failed and refused to dig canals and ditches to drain the hill lands of the defendant."

Appellee's general demurrer was presented at the same time to appellant's first amended original answer and his first supplemental answer, and sustained in one and the same decision by the trial court.

It will be noted from the original opinion rendered herein that, in passing upon this feature of the case, only the defense of fraud was considered in determining the correctness of this ruling of the trial court. Judge Hamilton, who delivered the opinion for the court, in reference thereto used the following language:

"This case is presented to us upon various propositions, none of which can be sustained unless it be one among them which suggests that the general demurrer ought not to have been sustained because the petition comprehended an allegation of fraud against the supervisors of the district and board of appraisers."

Therefore the question as to whether or not the demurrer was properly sustained to appellant's defense based upon the want of jurisdiction was not considered, but the disposition of the case made entirely to depend upon the defense of fraud. The defense of fraud was only presented by appellant's first supplemental answer, while his defense based upon the want of jurisdiction of the commissioners of appraisement to act was presented both by said supplemental answer and his first amended original answer, from which amended answer the allegations above quoted are taken, and which will largely be the basis for the questions that will now be discussed in this opinion.

Did the trial court err in sustaining appellee's general demurrer to that portion of appellant's answer presenting to appellee's cause of action the defense of want of jurisdiction over the subject-matter? That is, the want of power of the commissioners of appraisement to assess appellant for the benefits for which the assessment sought to be enforced was made? We will now address ourselves to the following questions, in the order stated, as being involved in determining as to the several propositions presented in reference to sustaining the general demurrer to that feature of appellant's defense:

(a) The validity of the act of the Legislature authorizing commissioners' courts to create a special tribunal, to wit, the commissioners of appraisement.

(b) Did the commissioners of appraisement constitute a valid court or special tribunal?

(c) The validity of the Laney Act, in s~ far as same authorizes the commissioners' courts to create levee improvement districts out of territory located in several counties.

(d) Jurisdiction of commissioners of appraisement, performing the functions of a special tribunal, to assess for benefits not embraced in plan of reclamation.

(e) Were the proceedings under which appellant was assessed according to the due course of the law of the land, in that he was only assessed for benefits embraced within the plan of reclamation?

(f) Do the allegations of appellant's first amended original answer, setting up a want of jurisdiction, constitute a collateral attack on the order of the commissioners of appraisement assessing him for benefits to accrue to him by virtue of appellee's plan of reclamation?

[2] Let it be understood and kept in mind, that, in testing the sufficiency of a plea challenged by a general demurrer, every material allegation as well as every reasonable intendment arising therefrom must be accepted and given effect as true.

[3] In reference to the constitutionality of the act, it is urged that the commissioners of appraisement do not constitute a "court," because the Legislature cannot confer upon commissioners' courts authority to create another court. The Legislature did not attempt to confer upon Commissioners' courts authority to create another "court," to wit, the commissioners of appraisement, but created that body by the plain provisions of the Laney Act (Acts 35th Leg. [1918] 4th Called Sess. c. 44 [Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½–5584½tt]), now included in articles 7972 to 8042, inclusive, Texas Revised Civil Statutes 1925, which provides for the selection of the individuals who shall compose that body by the board of supervisors; all authority and power being conferred by the provisions of the act creating the commissioners of appraisement. The commissioners' courts are not authorized to, and have not the power, to confer any authority upon commissioners of appraisement or to relieve them from the performance of any duty required by the act. As originally passed, the only authority conferred by the Laney Act upon commissioners' courts in reference to commissioners of appraisement was the appointment by a majority vote, after the creation of the district, of three supervisors for such district (see section 15 of said Act [Vernon's Ann. Civ. St. Supp. 1922, art. 5584½ee]), said supervisors in turn being authorized under section 19 (article 5584½fff) as same existed prior to the amendment by Acts of 1921, 37th Leg. 1st Called Sess. c. 50, p. 155, to appoint three disinterested commissioners to be known as commissioners of appraisement. Said commissioners are now required to be appointed by commissioners' courts. Article 7991, Texas Revised Civil Statutes 1925.

To sustain appellant's position would be to hold that the provisions for the existence of the commissioners of appraisement, as found in the act, had nothing to do with the creation of that body, and that same was not created until the commissioners' court, in exercising authority conferred upon it, had selected the individuals who were to constitute the personnel thereof. In other words, it would be to hold that the appointees were "the court" and not members thereof. We hold that the act of the Legislature created the body designated "commissioners of appraisement," and the only power conferred upon commissioners' courts in reference thereto was to select district supervisors. It is true, the act does not, independent of the organization of a levee improvement district, provide for the existence of commissioners of appraisement, but provides for the organization of the district by petition to be presented to and heard by a

commissioners' court, and, in due order of the organization of a district, confers authority on the Commissioners' Court, after having approved the petition for such organization, among other things, to appoint a board of supervisors, who, in turn, is authorized to select the personnel to compose the commissioners of appraisement. This conclusion is strengthened, if not clearly illustrated, by the judiciary provisions of our state Constitution, and the acts of the Legislature in pursuance thereof, which provides for the judiciary of Texas. The voters, in selecting the judges of the district courts, do not create the courts, but only supply by the expression of their choice at the ballot box the individuals who are to serve as judges of the different courts. Certainly it cannot be contended that in making this selection the electorate creates the courts any more than it can be successfully urged that, by the appointment of the district supervisors, who in turn, select commissioners of appraisement, the commissioners' court creates the commissioners of appraisement. Williams v. Castleman, 247 S. W. 263, § 10, at page 270, 112 Tex. 193.

[4] The Commissioners of Appraisement, as constituted, that assessed appellant's lands for benefits, did not constitute a court at law as the term "court" is commonly understood and applied in connection with proceedings at law dealing with the hearing and determination of a matter in dispute between litigants, although the authority conferred on that body involved in a limited sense the exercise of judicial discretion. That body only, at best, constituted a special tribunal, brought into existence to perform certain well defined service limited to the assessment of benefits to accrue to lands located within the district by virtue of the plan of reclamation that had been adopted, and, when that service was performed, to wit, viewing the lands within the district that would be affected by the plan of reclamation for such district if carried out, and all public roads, railroads, rights of way, and other property or improvements located upon such lands, and all such lands without the district as may be acquired under the provisions of said act for any purpose connected with or incident to the full carrying out of the plan of reclamation, the assessment of the amounts of benefits and all damages, if any, that would accrue to any tract of land within such district, or to any public highway, railroad, and other right of way, roadway, or other property, from carrying out and putting into effect the plan of reclamation for such district, prepare a report of their findings as provided for by the terms of said act, file said report with the secretary of the board of supervisors of the district to hear objections thereto, and, after having finally acted upon objections that

may have been made to said report, to make decree confirming such report in so far as it may be confirmed, and approving and confirming the same as it may be modified or changed (sections 21, 22, and 23, Acts 4th Called Sess. 35th Leg. 1918, p. 97 [Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½gg–5584½h]), said body ceased to exist for any purpose. Section 56, Id., now article 8032, Texas Revised Civil Statutes 1925; Chas. Shurbun v. Eliz. J. Hooper, Executrix, etc., 40 Mich. 503.

[5] Is the act void, for the reason that it confers upon commissioners' courts the authority to organize a levee district, because the Legislature cannot confer upon commissioners' courts authority to transact any business other than county business, and, further, because the organization of such districts does not constitute county business, and because it authorizes such districts to be created out of parts of more than one county? The act was passed in obedience to and under the authority of section 59, art. 16, of the Constitution of Texas, which was adopted as an amendment in 1917, as follows:

"The conservation and development of all of the natural resources of this state, including the control, storing, preservation and distribution, of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semiarid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forest, water and hydroelectric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the state are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto. There may be created within the state of Texas, or the state may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the Constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law."

Under a most careful analysis of the terms of the Laney Act, we have failed to find but one that is not sanctioned by or in keeping with the plain provisions of the above constitutional amendment. In fact, every provision in some form is essential in order to keep faith with the sovereign will of the people. As to the means to be employed and the proceedings to be had to accomplish its purpose, the Constitution leaves that to the wisdom of the legislative judgment of the state. This was not abused or in any respect transcended, except as to the

manner .in which said act, by section 19 thereof, provided for the appointment of commissioners of appraisement, which will hereafter be discussed. This is evident from a comparison of the provisions of the constitutional amendment and the terms of the legislative enactment. Within the meaning of the Constitution creating and conferring jurisdiction upon commissioners' courts, we think it is proper to give to the term "county business" a broad and liberal construction so as not to defeat the real purpose that was intended to be accomplished by the law in providing that commissioners' courts shall exercise such power and jurisdiction over all county business as is conferred by the Constitution and laws of the state, or as may be hereafter prescribed, and not that meaning which would restrict the powers of jurisdiction to the business of the county in and for which said court was created, but to include any and all business of that county and any other business of that county connected with or interrelated with the business of any other county properly within the jurisdiction of such courts, under the Constitution and laws of the state. This is not in conflict with the holding of the Supreme Court in the case of Electric Light Co. v. Keenan, 30 S. W. 868, 88 Tex. 201, in which the court holds that a commissioners' court could not be required to perform the duties imposed upon it by an act of the Legislature requiring it to take charge of and administer the affairs of the defunct corporation of the city of Seymour, whose charter had been declared void because same was not "county business" within the meaning of the provisions of the Constitution above quoted. The decision of the reported case must be limited to the question before the court, which clearly shows that the business thus intrusted by the act of the Legislature to the commissioners' court was not "county business" of Baylor county, or of any other county related to or connected with business of Baylor county. This decision involved the validity of an act of the Legislature making it the duty of the commissioners' court to act in matters that were not in any respect county business, while the act in question only confers jurisdiction to act in reference to matters that are of public concern to the people of the county, or counties, that may be interested, therefore "county business." This exact question has been directly decided contrary to appellant's contention in the case of Wharton County Drainage District v. Higby (Tex. Civ. App.) 149 S. W. 381.

The authority to create levee improvement districts out of parts of more than one county, we think, is expressly conferred upon the Legislature by section 59a of article 16, of our state Constitution, supra. Therefore the Legislature was strictly within the authority conferred by said constitutional provisions in passing the act now challenged on that ground. Manifestly, this amendment to the Constitution authorized the Legislature to provide for the creation, organization, and government of these districts in such manner as it might deem appropriate, without regard to county boundaries or the agencies selected by the Legislature for that purpose. The conservation of natural resources of any county in the manner provided by this amendment is essentially a part of the business of the county, whether confined within the particular county of the commissioners' court exercising jurisdiction or embracing as a part of the district lands located in other counties, for, as an incident to the exercise of other business, that is, the business of creating levee improvement districts as authorized by said constitutional provision, it is essential that these districts shall in some instances comprise parts of more than one county. In many instances a stream against which protection is sought forms a boundary of two counties. In that instance, as in this case, the nature of the stream is such that proper protection could not be afforded by a levee constructed in one county only. The Constitution, as it existed prior to the adoption of the conservation amendment, supra, did not authorize the creation of a district in more than one county, and one of the main purposes of the conservation amendment was to correct this vital defect, because, in all probability, it had been found impractical in many instances to secure protection by levee which was limited to one county only; and the public interests of the state can by no means be restricted to the limits of any one county.

[6] Appellant contends that the commissioners of appraisement had no jurisdiction to assess benefits for hill drainage; that their action in assessing such benefits exceeded their jurisdictional powers and must necessarily be void. Under the Laney Act, the appellee district is only authorized to assess "the benefits that would arise from the improvements." Therefore it follows that the benefits and not the land in this case was the subject-matter of the jurisdiction of the commissioners of appraisement. The law, in plain terms, forbids the assessment for benefits that would accrue for improvements not included within the plans of reclamation. Section 21 of said act, in part, provides:

"That said commissioners shall proceed to view the lands within such district, or that will be affected by the plan of reclamation for such district, if carried out * * * and all such lands without the district as may be acquired under the provision of this Act for any purpose connected with or incident to the fully carrying out of the plan of reclamation; they shall assess the amounts of benefits and all damages, if any, that will accrue to any tract of land within such district * * * from carrying out

and putting into effect the plan of reclamation for such district."

This language not only confers jurisdiction, but limits the jurisdiction conferred to assess benefits that will accrue from carrying out and putting into effect the plan of reclamation adopted by and for such district. It is alleged that hill drainage was not a part of the plan of reclamation adopted by said district, and that appellant's land located in the district was assessed for benefits to accrue to same on account of hill drainage. It is clear from the provisions of the act that the commissioners of appraisement had no jurisdiction to assess benefits for hill drainage, and that their action in assessing such benefits exceeded their jurisdictional powers, in that, in assessing for hill drainage, they did that which is expressly prohibited by statute, not only to safeguard the exercise of this limited jurisdiction, but more so for the protection of the rights of the parties to be determined thereby.

Section 52 of the Act (Vernon's Ann. Civ. St. Supp. 1922, art. 5584½qqq), provides that:

"It shall be unlawful for any levee improvement district * * * to undertake to construct, or maintain any levee or other improvements without first obtaining the approval by the state reclamation engineer, as provided in this act, of the plans for such levees or other improvements"; and, in the event of the violation of this provision, makes it "the duty of the Attorney General, on the request of the state reclamation engineer to file suit * * * to enjoin the construction or maintenance of such levee or other improvement."

And, by section 53 of said act (article 5584½r) it is made a criminal offense to violate the provisions of section 52, supra, said section 53, in part, providing:

"It shall be unlawful for any person, corporation or levee improvement district, without first obtaining the approval of plans for the same by the state reclamation engineer, to construct, attempt to construct, cause to be constructed, maintain or cause to be maintained, any levee or other such improvement on, along or near any stream of this state which is subject to floods, freshets or overflows, so as to control, regulate or otherwise change the flood waters of such stream."

—declaring the violation of said section to be a misdemeanor, and providing for punishment by fine of not less than $100 nor more than $1,000, or by imprisonment in the county jail for a period of not more than one year, or by both such fine and imprisonment. Certainly it cannot be contended that the commissioners of appraisement had any jurisdiction except such as the act conferred, and that, being a tribunal of limited jurisdiction so well defined as shown above, that body was not at liberty to in any respect exercise the jurisdiction conferred except in the form and for the purposes defined. It is true the law provides that they may assess benefits to lands lying within the district for which appointed, and that their findings, after notice, shall be conclusive; but it is also declared in no uncertain terms that they shall not assess for any benefits not within the plan of reclamation. The statute, in effect, provides that they cannot assess benefits for hill drainage unless the plan of reclamation provides for such drainage. According to the allegations of appellant's first amended answer, the plan of reclamation did not provide for hill drainage, and yet appellant's land was assessed for such drainage. According to our view of the law, the commissioners of appraisement not only did not have jurisdiction to assess for hill drainage, but when they made assessment for that purpose, same not being included in the plan of reclamation adopted by appellee district, they violated the express injunction of the civil statute, as well as the plain provisions of the penal law.

Appellant, in his answer to which the general exception was sustained, in effect alleges that: (a) Appellant's land could not be benefited by a levee; (b) that the plans of reclamation did not provide for hill drainage; (c) that the benefits assessed by the commissioners of appraisement were for hill drainage—something not within the plan of reclamation; (d) that no hill drainage was provided for out of the proceeds of the bond money, and that none could be provided because not embraced within the plans of reclamation; (e) that the commissioners of appraisement did not have jurisdiction to assess for hill drainage.

[7] It is true, the record made in the assessment of benefits does not recite in the order of assessment made by the commissioners of appraisement that the benefits for which they assessed were such as would arise from improvements according to the plans of reclamation. However, as such a recitation, if same had been made, would be at variance with the facts upon which jurisdiction to make the assessment depended, such order would not have been exempt from a bill of review instituted in the proper court, to wit, the district court, same being a court of general equitable power and jurisdiction. The act makes no provision for the filing and granting of a motion for a new trial, or for an appeal from the final action of the commissioners of appraisement, and the commissioners of appraisement have no power as a court of equity to entertain a bill of review to vacate its own judgments or to hear and determine any matter after having entered its final decree making the assessment for benefits. Section 23 of said act. Therefore its actions are subject to be reviewed by a bill of review, as same comes within the universal rule that, where an inferior tri-

bunal acts beyond the scope of its powers and are not themselves such courts of equity as may grant relief, the district court is the proper court or forum to be resorted to. We hold that the allegations clearly show that the assessment made against appellant for benefits on account of hill drainage was without jurisdiction on the part of the commissioners of appraisement to act, and therefore necessarily void. We further conclude that the allegations of appellant's amended answer setting up want of jurisdiction does not constitute a collateral attack on the order or judgment of the commissioners of appraisement sitting as a special tribunal.

[8, 9] We do not think it has ever been successfully contended that a judgment which a court was without jurisdiction to render could not be collaterally attacked. Such a judgment is not merely voidable, but it is absolutely void. Being void, such a judgment cannot be aided by a recital that the court has jurisdiction. In Easley v. Mc-Clinton, 33 Tex. 288, it was held that the record of a void judgment cannot be made to serve as evidence, for such a record does not import verity. In Milam County v. Robertson, 47 Tex. 222, it is held that a void judgment is a nullity, whether attacked in the tribunal which rendered it or any other. In Ortiz v. State (Tex. Civ. App.) 86 S. W. 45, and State v. Ortiz, 90 S. W. 1084, 99 Tex. 475, it is held that the recitals of a judgment which is void for want of jurisdiction in the court which rendered it cannot be looked to for any purpose. See, also, Thaxton v. Smith, 40 S. W. 14, 90 Tex. 589.

In Waldron v. Harvey, 46 S. E. 603, 54 W. Va. 608, 102 Am. St. Rep. 959, a decree of partition was attacked collaterally. The Supreme Court of West Virginia held that the decree was void, and then considered whether it should be so held on collateral attack. In passing on the question the court said:

"Counsel for the defense say that the court had jurisdiction for partition, and that even if it erred in a decree of sale, it is merely error, and is res judicata, and forever binding, and could be attacked only by appeal, not collaterally, as is done in this case. But this is answered by the fact that the decree is void, not voidable. A void decree may be reversed on appeal or bill of review or attacked collaterally." Cook v. Dorsey, 18 S. E. 468, 38 W. Va. 196, 2 Cyc. 590; Powell v. Erath County (C. C. A.) 274 F. 307, 308; Van Ness v. Crow (Tex. Civ. App.) 215 S. W. 572, 574; Patrucio v. Selkirk (Tex. Civ. App.) 160 S. W. 636; Scanlan v. Campbell, 55 S. W. 503, 22 Tex. Civ. App. 505; Schneider v. Sellers, 61 S. W. 542, 25 Tex. Civ. App. 226; Railway v. Moore (Tex. Civ. App.) 32 S. W. 379; Hammond v. Atlee, 39 S. W. 601, 15 Tex. Civ. App. 267; Chapman v. Clark (Tex. Civ. App.) 262 S. W. 161.

The proposition advanced by appellant that the Laney Act is void because by its terms it authorizes the appointment of commissioners of appraisement by the supervisors, who are landowners within the district, we have considered, but, in view of the fact that the owners of the bonds of appellee district are not parties defendant, and the Supreme Court has held that, under the issue as joined between appellant and appellee they are not necessary parties, we refrain from passing upon this proposition.

From a most painstaking and careful review of the many decisions cited by counsel appearing in this cause, and careful consideration and application of the helpful arguments presented pro and con in reference to questions involved, we have reached the conclusion that the trial court erred in sustaining the demurrers urged to appellant's first amended original answer, in so far as same by its allegations presented the defense of want of jurisdiction on the part of the commissioners of appraisement to make the assessment against appellant sought to be enforced. We therefore grant the prayer of appellant's motion for rehearing, recall the opinion rendered herein on the 27th day of June, 1925, and set aside the judgment rendered on appellee's motion for rehearing affirming judgment of the lower court, and overrule and refuse appellee's motion for rehearing, and reverse and remand the cause on the ground that the court erred in sustaining the exceptions to appellant's first amended original answer as above stated.

Appellant's motion for rehearing granted.

JONES, C. J. (dissenting). Unable to agree with the conclusion of the majority of this court that the judgment of affirmance heretofore entered in this case should be set aside and a judgment entered reversing and remanding same, it has become necessary for me to file this dissenting opinion.

The trial court sustained a general demurrer to appellant's answer, and this ruling resulted in the judgment in favor of appellee. In the opinion of the majority of the court this ruling was error, because of an allegation in said answer to the effect that the commissioners of appraisement exceeded their powers in the assessment of benefits against appellant's land, for the reason that, in assessing these benefits, they included a benefit arising from hill drainage, when improvement by hill drainage was not within the plan of reclamation. In order to understand the ruling of the trial court in sustaining the demurrer, it is necessary to bear in mind that appellee is a duly organized and existing reclamation district, organized for the purpose of improving and reclaiming land within said district; that there had been legally adopted a plan of reclamation which provided for the character of improvements that were to be made by appellee; that these improvements were to be made by

the proceeds arising from the issuance and sale of bonds by appellee; that the basis of credit for the issuance of the bonds rested solely upon the benefits assessed against the land within the appellee district, and the amount of such benefits was to be determined by a duly authorized board called "commissioners of appraisement," and assessed by such board against said lands to which benefits would result from the construction of the improvements; that these assessed benefits would become the basis for an annual tax levy to be made against these said lands and their owners, to continue until the bonded obligations of the district had been discharged; that benefits were assessed by said commissioners in named amounts against the various tracts of land owned by appellant and included within the bounds of the appellee district; that an annual tax levy was duly made on all the lands on which benefits had been assessed; that appellant was in default in the payment of the tax thus assessed against him, and this suit was instituted under the provisions of law to enforce the payment of such taxes; that appellant answered said suit, alleging the defensive matters described in the opinion of the majority of this court, and in which defensive allegations was the one above named.

It should further be borne in mind that when the commissioners of appraisement have determined the benefits that will result to the said land from the scheme of improvement, as well as the damages that will likewise result therefrom, they are required by law to embody their findings in a written report and to notify all parties interested in such findings to appear before them at a designated time and offer whatever protests they might desire to make against the findings that affected their lands. After such hearing a final report is prepared embodying their findings or modified findings, and this report is entered in the minutes of the board of supervisors as the final judgment on the matter of benefits and damages, and is filed for record in the office of the county clerk of each county in which a portion of the district may be situated. The pleadings show that in the instant case the law in respect to all of these matters was fully complied with by the commissioners of appraisement, and appellant's pleadings show that he appeared before the commissioners of appraisement at the time designated for a hearing of any protest that he might desire to make in reference to benefits assessed against his lands. With the assessments of benefits against the land within the appellee district as a basis for credit, bonds were duly issued and sold and the improvements provided for by the plan of reclamation undertaken with the proceeds of the sale of the bonds.

It is thus seen that the final judgment of the commissioners of appraisement assessing damages and benefits to land within the appellee district is made by law a permanent record, available for inspection to any one who may have an interest therein. Not only does the law provide that this judgment shall become a permanent record, but such judgment is given the same conclusiveness and finality that is given to judgments and decrees of domestic courts of general jurisdiction. This legislative declaration is couched in the following language:

"The findings of the commissioners as to benefits and damages to lands, railways and other property within the district shall be final and conclusive."

This enactment is based upon sound public policy, and on its observance rests the security of the state that the beneficent effect of the Laney Act may be realized. These assessed benefits are the only basis for credit possessed by a reclamation district organized under this act, and, unless the law makes this credit secure and unchangeable, such a district could not sell its bonds, and the purpose of its organization could not be effected. The effect of the enactment as to the finality and conclusiveness of this judgment of the commissioners of appraisement is to give to such judgment the same presumptions that are accorded judgments and decrees of courts of general jurisdiction, and to apply to it the same rule of law in reference to setting it aside or amending its provisions. The writer therefore applies in this case the rules of law which would apply were this a judgment of a domestic court of general jurisdiction.

It is therefore obvious that the character of attack made by this allegation on this judgment must first be determined in reference to whether it is direct or collateral. The opinion of the Supreme Court, through the Commission of Appeals, in answer to the certified questions in this case, clearly holds that the answer of appellant constituted a collateral attack on the said judgment. Glenn v. Dallas County Levee Dist., 268 S. W. 452. Indeed, it cannot be conceived that any other holding could have been made. This attack is made against the jurisdiction of the commissioners of appraisement, not as a cross-action in the nature of a bill of review, whose specific purpose is to set aside or correct such judgment, for it is deficient both in substance and parties required of such a pleading and is therefore merely a plea in bar of appellee's suit. In a direct attack on a judgment, all parties whose interests are such that they would be directly and materially affected by the judgment are necessary parties. In its last analysis, the only parties really at interest in whether this judgment should be upheld or set aside are the bondholders, who are not made parties to this action. In addition to this defect, the allegation under review does not

point out with that definiteness and certainty required in such a pleading in reference to the things which would render a judgment invalid. Crawford v. McDonald, 33 S. W. 325, 88 Tex. 626; Estey & Camp v. Williams, 133 S. W. 470, 63 Tex. Civ. App. 323; Smith v. Perkins, 16 S. W. 805, 81 Tex. 152, 26 Am. St. Rep. 794; Brooks v. Powell (Tex. Civ. App.) 29 S. W. 809.

Does the allegation in question constitute a valid collateral attack on the judgment of the commissioners of appraisement? We do not think so, for in such an attack on a judgment it is not only necessary to allege the absence of the jurisdictional fact which renders the judgment void, but, also, to allege that the record affirmatively shows the absence of such jurisdictional fact. 34 C. J. 532. This rule of law is abundantly established by our own decisions.

In the case of Crawford v. McDonald, supra, the Supreme Court said:

"Since the rule of public policy above referred to precludes inquiry in a collateral attack into even a jurisdictional fact, when the evidence thereof does not appear from the face of the record, it must follow, for stronger reasons, that the judgment in this case affirming the sale cannot be attacked collaterally by evidence dehors the record to the effect that the sale was not in fact made at the place required by law."

In Oliver v. Bordner (Tex. Civ. App.) 145 S. W. 656, the court said:

"It is a general rule of law in this state that in a collateral proceeding the only contingency in which the judgment of a domestic court of general jurisdiction which has assumed to act can be questioned is where the record affirmatively shows that jurisdiction did not attach."

In Murchison v. White, 54 Tex. 82, it is said:

"It is believed that a careful analysis of the cases on this subject will show that, in a collateral proceeding, the only contingency in which the judgment of a domestic court of general jurisdiction, which has assumed to act in a case over which it might by law take jurisdiction of the subject-matter and the person, can be questioned, is when the record shows affirmatively that its jurisdiction did not attach in the particular case."

In Williams v. Haynes, 13 S. W. 1029, 77 Tex. 283, 19 Am. St. Rep. 752, it is said:

"It is settled that a judgment of a court of competent jurisdiction cannot be collaterally impeached unless the record affirmatively shows the want of jurisdiction."

Similar quotations from the higher courts of this state might be carried on to an indefinite length, but the above are sufficient to show the settled law of this state in reference to the question under review.

Is there anything in the record to suggest that the commissioners of appraisement in assessing benefits went beyond the plan of reclamation and made hill drainage an element of the benefits assessed? Appellant does not allege that such fact is so shown, and the record as presented to this court merely shows the assessment of benefits, without describing the character of benefits considered in making the assessments. The commissioners of appraisement had the power and jurisdiction to assess all benefits that would result to appellant's land by the construction of improvements under the plan of reclamation. The presumption of law is, that only benefits resulting from said plan were assessed, and this presumption is conclusive against any allegation to the contrary that would require evidence dehors the record to establish the facts alleged. It will require evidence dehors the record to establish the fact that an element entering into the benefits assessed against appellant's land was that of hill drainage. Under the authorities above quoted, such evidence was not admissible to establish the attack made upon the judgment by the allegation in question.

As it affirmatively appears from the pleading in this case that, before the judgment of the commissioners of appraisement fixing the benefits to be assessed against appellant's land can be declared invalid, evidence other than that shown by the record must be offered, the writer is of the opinion that the court correctly sustained the general demurrer.