## ESTEY & CAMP ET AL. v. H. G. WILLIAMS.

### Decided December 14, 1910.

**1.—Judgment—Cloud on Title—Collateral Attack—Service of Process.**

Suit by a purchaser of land to remove the cloud cast on his title by the recorded abstracts of judgments in Justice Court against his vendor was not a direct, but a collateral attack on such judgments, and testimony of his vendor that he was never served with citation in and had no notice of those suits was inadmissible to contradict the recital of service in the judgments and the citation and officer's return showing same.

**2.—Same.**

A purchaser of land from one against whom there are judgment liens of record is not entitled to maintain a direct action to avoid such judgments as being obtained without service on his vendor. Only the parties to a judgment can bring suit to set it aside.

**3.—Judgment—Action to Set Aside—Service of Process—Sufficiency of Evidence.**

As against a recital of service in a judgment and the officer's return on citation showing same, the testimony of the defendant, an interested party, that he was not in fact served is, it seems, insufficient by itself to establish such fact.

Appeal from the District Court of Bosque County. Tried below before Hon. O. L. Lockett.

*Frank M. Brantley* and *Jas. M. Robertson,* for appellants.—The proceeding was a collateral attack on the judgments, and evidence de hors the record was inadmissible to impeach the recitals of service on defendant. Heck & Baker v. Martin, 75 Texas, 471; Williams v. Haynes, 77 Texas, 283; Crawford v. McDonald, 88 Texas, 631, 632; Irion v. Bexar County, 26 Texas Civ. App., 527. That the attack was collateral, in addition to above authorities, see also, Scudder v. Cox, 35 Texas Civ. App., 416, and authorities cited. The evidence did not warrant a finding that defendant had not been served with process. Hamble v. Davis, 33 S. W., 251; Lyle v. Horstman, 25 S. W., 802, and authorities cited.

*E. B. Robertson* and *Cureton & Cureton,* for appellee.—This suit is in the nature of a direct proceeding, and the court did not err in admitting the testimony complained of showing the want of service of citation in the Justice Court judgments. Scanlan v. Campbell, 22 Texas Civ. App., 505; Carpenter v. Anderson, 33 Texas Civ. App., 484; Schneider

v. Sellers, 25 Texas Civ. App., 226; Heidenheimer v. Loring, 6 Texas Civ. App., 560; McCampbell v. Durst, 73 Texas, 410; Templeton v. Ferguson, 89 Texas, 47; Crawford v. McDonald, 88 Texas, 631.

RICE, ASSOCIATE JUSTICE.—This suit was brought by appellee against appellants to remove cloud from title to two tracts of land situated in Bosque County, cast thereon by the record of two abstracts of judgments duly recorded and indexed in said county. Plaintiff alleged that during the year 1898 appellants brought two suits in the Justice Court of precinct No. 1, Tarrant County, against John Luther, in each of which they recovered judgments against said Luther, one for $175.50 with costs of suit, and the other for $226, with costs, each bearing ten per cent interest from date of rendition thereof, November 28, 1898. That thereafter on the 14th of March, 1908, abstracts of said judgments were by them caused to be duly filed, recorded and indexed in the office of the county clerk of said Bosque County; that subsequent to the filing of said abstracts, towit: in November, 1908, plaintiff purchased said tracts of land from said John Luther, defendant in said judgments; that the same are a cloud upon plaintiff's said title and hinder the sale and transfer thereof; that both of said judgments are void, because no service was ever had on plaintiff's vendor, defendant Luther, in said Justice Court cases and prayed for judgment removing said cloud from the said title.

Appellants answered by general and special exception, pleas of not guilty, general denial, and by way of cross-bill averred that said judgments are valid and subsisting, and that they were duly rendered and obtained in favor of said Estey & Camp against said John Luther, the defendant therein, the vendor of appellee; and that the same were duly abstracted in said Bosque County, as alleged by appellee, prior to the latter's purchase of the land, and that if appellee ever acquired any interest or title to said land, he acquired same through said purported conveyance from said Luther, the defendant in said judgments, and with full notice, both actual and constructive, of the existence thereof, and of the record of said abstracts thereof in said Bosque County, and subject to the liens created thereby on said lands, and that by reason of the premises, appellants have and are entitled to valid and subsisting judgment liens in the amounts of said two respective judgments, with costs and accrued interest, as per the terms thereof, as against said lands, superior to any claim or interest of appellee thereto, and prayed for a foreclosure of the same.

The case was tried before the court without a jury, and judgment rendered in favor of appellee, from which this appeal is prosecuted.

The principal question raised by this appeal, as presented by the first three assignments, is whether or not the trial court ruled correctly in admitting testimony *de hors* the record of the two Justice Court judgments, seeking to impeach the verity thereof. The bill of exception shows that, over objection of appellants, John Luther, the defendant in said Justice Court judgments, was allowed to testify that he never

had any notice that any suit had been filed against him in the Justice Court of Tarrant County by Estey & Camp, and that he was never served with citation in either of said causes, and that he did not know of the rendition of said judgments until some time in 1908, when he was informed thereof by the sheriff of Bosque County, who then had executions in his hands, issued thereon against him. The constable, at the time that the citations were supposed to have been served upon him, testified, over objection of appellants, that he had no personal recollection of ever having served said citation, but admitted, however, that the returns thereon were made by him. Copies of said two Justice Court judgments were introduced in evidence, as well as the citations upon which they were rendered, together with the abstract of said judgments, duly filed, recorded and indexed in Bosque County, as alleged in the pleading; and each of said judgments recited that the defendant, John Luther, although duly cited, had made default, and the returns upon said citations showed that said Luther was duly served in person. Appellants by their proposition contend that the evidence above mentioned, admitted over their objection, was not admissible, for the reason that it was sought thereby to impeach and attack, in a collateral proceeding, the validity of the judgments in question, by showing by parol testimony, *de hors* the record, that defendant had not been served with process or duly cited therein, in the face of the recitals and adjudication in said judgments of the fact that he had been duly cited, because the same imported absolute verity, and the validity thereof could not be impeached in such manner.

Appellee, while admitting that said judgments could not be impeached in a collateral proceeding, insisted that the present was in the nature of a direct attack upon said judgments, and hence he was entitled to show by parol that no service was ever had upon the defendant therein, and that said judgments were therefore void. So that we are met upon the threshold of this inquiry with the question as to whether or not the attack in the present instance upon the Justice Court judgments is direct or collateral. If the former, then it was competent to show by parol testimony that the defendant in said judgments was never served with process, and that the court had no power to render the same, and that the same were therefore void. But if such attack is collateral, then the rule seems to be well settled that judgments of courts of general jurisdiction over the subject matter and parties thereto, where service of citation appears from the face thereof, can not be assailed in a collateral proceeding, but in such case they import absolute verity, and are not subject to impeachment. See Heck v. Martin, 75 Texas, 471, 16 Am. St., 915; Williams v. Haynes, 77 Texas, 283, 19 Am. St., 752; Crawford v. McDonald, 88 Texas, 631. "And it seems to be equally as well recognized in this State," says Justice Collard, in Heck v. Martin, *supra,* "that Justice Courts are, within their defined limits, tribunals of general jurisdiction, and as such all reasonable presumptions should be indulged in support of their judgments." See also Homer v. Baker, 67 Texas, 107; Williams v. Ball, 52 Texas, 603. "For," as said in Mur-

chison v. White, 54 Texas, 78, "such questions, in a collateral proceeding, should be tried by the record itself." Freeman on Judgments, secs. 132-4; Carpentier v. Oakland, 30 Cal., 430.

With reference to the presumptions that should obtain in collateral attacks upon Justice Court judgments, see also Clayton v. Hurt, 88 Texas, 595; Burns v. Barker, 31 Texas Civ. App., 82, 71 S. W., 328. In Clayton v. Hurt, *supra,* Justice Denman says: "The language of the Constitution that the justices of the peace shall have jurisdiction, etc., confers upon them the general judicial powers of the government over the subjects therein specified, subject to the limitations therein prescribed, and such jurisdiction is as general and exclusive as is that of the various other courts mentioned in the Constitution over the subjects committed to them. The fact that their judgments are subject to revision in the various forms prescribed by law, does not tend to show that they are courts of limited or special jurisdiction, for such judgments can be revised or annulled only in the instances and in the manner prescribed by the Constitution in fixing the jurisdiction of other courts, and until so revised or amended, are of as much binding force as the judgments of any other court."

As to what constitutes a collateral attack, it is said in Cyc., vol. 23, p. 1062, that "The term collateral, as used in this connection, is opposed to 'direct.' If an action or proceeding is brought for the very purpose of impeaching or overturning the judgment it is a direct attack upon it. Such is a motion or other proceeding to vacate, annul, cancel or set aside the judgment, or any proceeding to review it in an appellate court, whether by appeal, error or certiorari, or bill of review or, under some circumstances, an action to quiet title. On the other hand, if the action or proceeding has an independent purpose, and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral. This is the case when the proceeding is founded upon the judgment in question or upon its incidents or consequences as a judgment, or where the judgment forms a part of plaintiff's title or of the evidence by which his claim is supported." See note 68, p. 1064, *Id.* See, also, Brooks v. Powell, 29 S. W., 809, and authorities there cited; also Smith v. Perkins, 81 Texas, 152, 26 Am. St., 794. To the same effect is Black on Judgments, vol. 1, sec. 252. See also Vanfleet on Collateral Attack, secs. 2 and 3; Freeman on Judgments, sec. —.

In O'Neal v. Potvin, 13 Idaho, 721, 93 Pac., 20, which was an action to quiet title to land in appellant, who based his title to the land upon a deed from one Malafant, the appellee Potvin claiming under a sale under execution to enforce a judgment rendered in the latter's favor against Malafant, the court said: "The appellant in this action seeks to obtain some other relief than that of setting aside said judgment. The main object is to quiet the title to said land in himself, and, although the overturning of the judgment is necessary to his success, it does not make this action any the less a collateral attack upon said judgment."

In the case of Loan and Deposit Co. of A. v. Campbell, 27 Texas

Civ. App., 52, 65 S. W., 65, where a purchaser of land from a judgment debtor, subsequent to the time the judgment lien attached to the land, sought to enjoin the enforcement of the judgment against the land on the ground, among others, that the judgment was void, the court held that the attack on the judgment was a collateral one, and not direct. Also suggesting that the purchaser could not be an innocent purchaser of the land as against the judgment lien.

It will be observed in this case that the suit was not brought with the view nor for the purpose of canceling the judgment, and there is no prayer to that effect, but it only seeks, as shown by the prayer, to have judgment removing the cloud from his title, which was the lien fixed thereon by the recording of the abstracts of said Justice Court judgments. Nor do we think plaintiff had the right, even if he had so alleged, to bring an action to set aside the judgments themselves. He was not interested therein, except so far as the same may have constituted a lien upon the land, which was an incident of said judgments. We therefore think that the attack on the judgments was not a direct attack, but was merely a collateral attack thereon; and, being such, the Justice Court judgments reciting that the defendant therein had been duly served, imported absolute verity, and could not be impeached by parol testimony *de hors* the record, for which reason the court erred in admitting the testimony of both the defendant Luther and the constable over defendants' objection. See Heck v. Martin, Williams v. Haynes, Crawford v. McDonald, *supra;* Irion v. Bexar County, 26 Texas Civ. App., 527, 2 Tex. Ct. Rep., 863; Scudder v. Cox, 35 Texas Civ. App., 416, and authorities there cited.

But, even if we are mistaken in this view, and the attack should be held to be direct, then the question arises as to whether or not the appellee, who was a stranger to said judgments, would have the right to make a direct attack thereon. Appellants' counsel, in an able and elaborate argument, contend that he would not have such right, and cite in support of their contention numerous authorities, among them Black on Judgments, vol. 1, sec. 317, wherein it is said: "As a general rule, a judgment will not be vacated or set aside at the motion of a third person not a party to the action. It will be remembered that such persons have the right to impeach a judgment collaterally whenever and wherever it comes in conflict with their rights, if it was founded in fraud and collusion, and this will generally be adequate protection to them."

Likewise, Freeman on Judgments, sec. 91, says: "As a general rule, none but the parties to a judgment can have it set aside. Every litigant, if an adult, is presumed to understand his own interests, and to be fully competent to protect them in the courts. He has the right to waive all irregularities in proceedings by which he is affected, and is entitled to exclusively decide upon the propriety of such waiver. To allow disinterested third persons to interpose in his behalf and to undertake the management of his business according to their judgment, would create intolerable confusion and annoyance and produce no desirable result.

To permit third persons to become interested after judgment and to overturn adjudications to which the original parties made no objection, would encourage litigation and disturb the repose beneficial to society. Therefore, if the defendant be the real, as well as the nominal, party affected, as long as he is satisfied with the judgment, all other persons must be. None of his subsequent assignees can complain for him. He who purchases lands liable to a judgment lien can not have the judgment vacated for irregularity to avoid the lien." The same author says, in section 512: "No person will be permitted to proceed in equity against a judgment or decree to which he is not a party, and which does not at its rendition affect any of his rights. If the parties to an adjudication are satisfied with it, no outside persons will be permitted to intermeddle with it at law or in equity. The grantee of land charged with a judgment lien at the date of the grant can not have the judgment set aside for fraud, nor can he in any manner inquire into the consideration of the judgment, for the purpose of impeaching or avoiding it. Having taken the land subject to a lien of which the grantor made no complaint, the grantee must abide by that lien, unless he can show that it was procured by fraud and design and calculated to prejudice him as a subsequent purchaser.

In the case of Marriner v. Smith, 27 Cal., 652, it was said that "Goode, the defendant in the judgment vacated, is not a party to this action; he has made no complaint against the judgment. Of course the plaintiffs can not interfere in his behalf and they have no interest in the matter; except so far as the judgment lien may affect their property they have no right to have the judgment absolutely vacated and annulled." To the same effect is the doctrine laid down in Hogg v. Link, 90 Ind., 346, wherein the court on page 358 says: "Where one takes a conveyance, with legal notice of a judgment lien upon the land, though he pay full value, he must rely upon his grantor's covenants and the equities arising out of the relations thus voluntarily assumed, without the right to impeach the judgment for fraud practiced against the judgment defendant alone in the procurement of the judgment. We know of no principle of law or equity or statutory provision authorizing him to impeach the judgment."

The Supreme Court of Nebraska, in Powell v. McDowell, 16 Neb., 426, says: "We know of no rule which permits a person to buy into a suit after judgment with full knowledge, either actual or constructive, of all the proceedings, and then reopen the case, in order that litigation may be indefinitely prolonged in the settlement of the supposed defenses."

Cyc., vol. 23, p. 898b, discussing this subject, says: "A judgment will not be vacated or set aside on the motion of a third person who was not a party or privy to the action, unless it appears that the moving party was the real party in interest, although the judgment proceeded for or against a nominal party, or was a surety for the principal debtor or a garnishee, or unless the judgment was obtained by fraud or collusion, and he bears such relation thereto that his rights may be affected."

In Packard v. Smith, 9 Wis., 184, it is held, as shown by the syllabus,

that "A person, not a party to the record of a judgment, can not move the court to vacate the judgment for irregularities committed in entering up and docketing it"; and that this is true notwithstanding the fact that the party making the motion was a subsequent purchaser of the lands upon which the judgment had become a lien.

We think the above authorities announce a correct principle of law, because we do not believe that a stranger to the judgment, notwithstanding the fact that he may have purchased the property that may be affected by the lien, ought to have the right to institute a direct proceeding for the purpose of setting aside the original judgment. Therefore, if he had no such right the attack must be regarded as collateral, in which case, we have seen, parol testimony could not be offered to impeach the judgment, for which reason we sustain the several assignments complaining of the admission of such testimony.

The fourth assignment questions the sufficiency of the evidence to support the judgment. In passing upon this point, and without going into the evidence in detail, suffice it to say that outside of the testimony of Luther, the defendant in the Justice Court judgments, there was no evidence showing or tending to show that he was not served with citation in said cases. While the constable testified that he had no personal recollection of having served the citation upon him, yet when they were shown to him he admitted that they were correct, and his whole evidence, we think, has the tendency rather to sustain than to negative the correctness of his returns. So that, even if the attack was direct, and it was proper to have admitted parol testimony for the purpose of showing that the said Luther had not been served with citation, still, we are inclined to believe that, even in that event, the judgment could not be sustained. It would have been but the testimony of an interested defendant against the return of a sworn officer, who was not shown to have had any interest in making a false return. We think that the solemn records of a court ought not to be set aside upon such testimony. While it may be true that defendant Luther was not served, yet it is better to adopt a rule sustaining and supporting the solemnity of judgments where thus attacked, rather than to open a door for setting them aside by the testimony of one witness, especially where he is shown to be interested.

In Hamble v. Davis, 33 S. W., 251, discussing a similar question, Chief Justice Key says: "Proof stronger than mere probability should be required of anyone who in a collateral proceeding attempts to overthrow a judgment of a domestic court of general jurisdiction. The facts relied on to accomplish that result should be established with manifest certainty."

In Herman on Estoppel, vol. 1, sec. 544, it is said: "Where there is a finding by the court that a defendant has been duly served with process, such finding can not be impeached by the evidence of such defendant. For if a record of a judgment is prima facie evidence, the burden of proof to overthrow this presumption of service is on the defendant, and his uncorroborated testimony should not be allowed to

overcome the return of the officer as to service, and the recital in the record of jurisdiction, when it is for his interest to have the record impeached."

The Supreme Court of Illinois, in Davis v. Dresback, 81 Ill., 395, in passing upon the point, says: "The rights of the parties and sound public policy require that the return of a sworn officer should not be set aside, except upon clear and satisfactory evidence. If the return of a sheriff can be impeached, and a judgment and decree vacated upon the evidence alone of the defendant who has been served with process, that stability which characterizes our judicial proceedings will be lost, and a wide door will be opened for the temptation to commit perjury by the unscrupulous."

We are therefore inclined to believe that the evidence in this case, even if it had been properly admitted, was not sufficient to show that the Justice Court judgments had been rendered without legal service, and therefore sustain the assignment presenting that question.

It follows from what has been said that we think the trial court erred in rendering judgment for appellee, but should have rendered judgment for appellants on their cross-action.

It is therefore ordered that the judgment of the court below be reversed and judgment now here rendered in behalf of appellants for the amounts shown to be due them on said Justice Court judgments, together with interest and costs, with a foreclosure of their judgment lien upon the two tracts of land described in plaintiff's petition.

*Reversed and rendered.*

Writ of error refused.