SPENCE et ux. v. STATE NAT. BANK OF EL PASO et al.    (No. 1971.)

Court of Civil Appeals of Texas.    El Paso. March 3, 1927.

Rehearing Denied April 28, 1927.

1. Receivers ⬤⟿139—Mortgagors held, as matter of law, not entitled to property as against bona fide purchaser for value from receiver pursuant to decree of foreclosure and sale confirmed by court.

Mortgagors *held*, as matter of law, not entitled to property as against bona fide purchaser for value holding under deed executed by receiver, pursuant to decree of foreclosure and sale *confirmed* by court, where proceedings were not void on face, no good defense to original suit was shown, and property was not mortgagors' business homestead.

2. Insane persons ⬤⟿100—Judgment against insane person is not void and cannot be attacked collaterally.

Judgment against insane person is not void and cannot be attacked in collateral action, but only in direct proceeding for such purpose.

3. Receivers ⬤⟿30—Receiver may be appointed on court's own motion.

Receiver may be appointed on court's own motion without application therefor.

4. Receivers ⬤⟿135—Court may order sale of land by receiver.

Statutes requiring sale of property by sheriff under process of execution or order of sale may be resorted to by court administering property through receiver, but such provisions are not exclusive, and court may order sale by receiver.

5. Receivers ⬤⟿142 — Purchaser under deed from receiver need not examine all proceedings in case in which receiver is appointed.

Purchaser under deed from receiver is not bound to examine all proceedings in case in

which receiver is appointed; it being sufficient to show that there was such suit, in which court had jurisdiction of parties and subject-matter, that receiver was appointed and sale ordered, made, and confirmed.

**6. Receivers ☞142—Purchaser from receiver without notice of irregularities leading to sale is protected where judgment, sale, and receiver's deed were regular (Rev. St. 1925, art. 3818).**

Where judgment and sale made thereunder by receiver and receiver's deed were regular, purchaser without notice of irregularities leading up to sale that would avoid it is protected, in view of Rev. St. 1925, art. 3818.

**7. Homestead ☞13—Only one business homestead may be claimed.**

One having several places of business can claim only one as his business homestead.

**8. Homestead ☞36—Property must be adapted and reasonably necessary to business engaged in and used for such purpose to be "business homestead."**

To exempt property from execution as business homestead, it must be adapted and reasonably necessary to business engaged in, and must be used for such purpose.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Business Homestead.]

**9. Homestead ☞36—Mortgaged apartments in which was no office room held, as matter of law, not "business homestead" of mortgagor.**

Mortgaged apartments *held*, as matter of law, not business homestead of mortgagor, where there was no office room in building, though he occupied storeroom at will of tenant.

**10. Dismissal and nonsuit ☞19(2)—Plaintiff cannot prejudice rights of defendant on counterclaim by taking nonsuit (Rev. St. 1925, arts. 2016, 2182).**

Plaintiff by his nonsuit cannot prejudice right of adverse party to be heard on claim for affirmative relief on counterclaim, in view of Rev. St. 1925, arts. 2016, 2182.

**11. Judgment ☞443(2)—Judgment fixing and foreclosing mortgage lien held not void nor voidable on ground that mortgagors' attorneys abandoned their defense.**

Judgment fixing and foreclosing mortgage lien on property *held* not void nor voidable on ground that mortgagors' attorneys abandoned defense, where such attorneys, after being employed by mortgagor, advised him that they held retainer from adverse party and dropped out of suit, after which other attorneys took up mortgagors' defense.

**12. Receivers ☞139 — Mortgagors' petition charging collusion in receiver's sale should make all parties to such collusion parties to suit.**

Petition of mortgagors charging that two banks, mortgagor's receiver, and purchaser at receiver's sale fraudulently colluded and combined to deprive mortgagors of property, by reason of which receiver's sale was simulated, fraudulent, and void, should make all parties to collusion parties to suit.

Error from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by Frank A. Spence and wife against the State National Bank of El Paso and another. Judgment for defendant Frank B. Hadlock, and plaintiffs bring error. Affirmed.

Waters Davis, of El Paso, for plaintiffs in error.

Kemp & Nagle and Armstrong & Morrow, all of El Paso, for defendants in error.

WALTHALL, J. Plaintiffs in error, Frank A. Spence and wife, Ouida Spence, filed this suit November 24, 1925, against State National Bank and Frank B. Hadlock, the first count in the petition being in the usual form of trespass to try title to recover lots 1, 2, and 3, and the westerly 60 feet of lot 4, in block 264, of Campbell's addition to the city of El Paso, Tex. In the second count of the petition, plaintiffs in error set up that defendant in error Hadlock was claiming the property in controversy under a judgment in a former suit and sale made thereunder by Tom B. Newman, a receiver appointed by the court, and which judgment and sale plaintiffs in error seek to have set aside for reasons stated.

A brief statement of the matters in controversy occurring prior to and leading up to the instant suit are substantially as follows: The property in controversy is a large three-story brick building, known as the Lucerne Apartments, at Boulevard and Campbell streets, in the city of El Paso. The ground floor contains four storerooms and one apartment; the second and third floors are made into and occupied as apartments. On the roof, referred to and known as the roof garden, there is a glassed-in room. Spence bought the property in controversy December 14, 1916, and as a part of the consideration therefor assumed the debts then existing on said property in the form of mortgage liens and thereafter gave several mortgages on it.

In April, 1920, the First National Bank filed suit against Spence, said cause being numbered 19048, in which suit judgment was sought for $40,463.22, and to foreclose liens on property other than the property in controversy. In July, 1920, defendant in error State National Bank filed suit No. 19322, seeking judgment against Spence for $65,000, and to foreclose mortgage liens on the property in controversy. On July 26, 1920, the First National Bank, in its cause No. 19048, filed an application for a receiver. On July 31, 1920, the State National Bank intervened in cause No. 19048, and joined the First National Bank in its said cause in its application for a receiver for Spence's entire es-

tate. On the last-named date the court appointed Tom B. Newman with instructions to collect rents, etc., pending hearing on applications for receiver, and stating in said order that the appointment of Newman in no way was to be construed that a receiver should or would be appointed. On September 4, 1920, Spence and wife, in cause No. 19048, having joined in the application for receiver, Newman was appointed receiver for all of their nonexempt property with power to collect rents and from the collections to pay Spence $400 per month, and to enter appearance in other pending causes against Spence. Newman, as receiver, filed answer in cause No. 19322, the parties to that suit being State National Bank, Spence and wife, Suggs, Newman, as receiver, Gilchrist, and Florey. In cause No. 19322, judgment was entered on September 16, 1920, foreclosing the mortgage lien on the property held by the State National Bank.

The State National Bank thereupon filed in cause 19048 a statement of the proceedings in cause 19322, and asked for an order directing the receiver to sell the property in controversy. The court granted the application and ordered the receiver to sell the property. The order was made in cause No. 19048. The receiver sold the property in controversy to defendant in error Hadlock. The sale was approved, and on October 2, 1920, in cause No. 19048, the court entered an order of confirmation of this sale vesting title in Hadlock.

Spence and wife, on November 24, 1925, filed this suit against State National Bank and Frank B. Hadlock, in their first count in trespass to try title to the property in controversy, and, as a second count, to set aside the judgment recovered in cause No. 19322, and to set aside the receiver's sale in cause No. 19048, and to recover the lots in controversy, substantially, on the following grounds: The property was his business homestead at the times the mortgages were given and foreclosed. Spence was insane at the times of the judgment of foreclosure and sale, and no guardian was appointed. That fraud was practiced on him in said proceedings whereby said judgment and sale were had in that his lawyers were unfaithful and the State National Bank, Newman, receiver, and Hadlock, the purchaser, fraudulently colluded and effected a simulated sale of the property.

Defendants answered by general demurrer, general denial, and set up the following special answers: Denied this property was Spence's business homestead; that at the time Spence acquired this property the value of his residence homestead without improvements, exceeded $5,000, and he could not acquire a business homestead, his homestead rights being exhausted. That at the time of its acquisition the value of his residence homestead, without improvements, largely exceeded $5,000.

Defendants set up the various mortgage liens held by defendant in error bank on this property, and the judgment in cause No. 19322, fixing and foreclosing said liens, the appointment of the receiver, the order of sale, the sale and its confirmation in cause No. 19048. Defendant Hadlock pleaded that he be quieted in his title to said property and that the court should decree "that the said Frank B. Hadlock is the owner thereof as against any and all claim of said Frank A. Spence and wife, Ouida Spence, or, if not the owner, that the same be sold in satisfaction of said liens," and prays for general and equitable relief; that after said sale Spence had been adjudged a bankrupt, and which proceedings were still pending, and A. H. Anderson was the appointed trustee.

Both defendants plead the 4-year limitation statute.

Hadlock pleaded that he was an innocent purchaser for value, and pleaded the 3 and 5 years' statute of limitation.

By supplemental petition Spence alleged that the appointment of the receiver was void, because: The judgment appointing the receiver recited that the receiver was appointed on his application, and that the court appointed no master in chancery.

At the conclusion of the trial the defendants in error moved the court to instruct the jury to find for defendants in error. Plaintiffs in error asked leave to nonsuit. The court entered an order of nonsuit without prejudice to plaintiffs' right against defendant in error State National Bank, but directed a verdict in favor of defendant in error Hadlock, the purchaser of the property for the property in controversy, on Hadlock's cross-action, and entered judgment accordingly.

In due time plaintiffs in error filed their petition and bond for writ of error and had citation served.

### Opinion.

We will designate the parties in this appeal as plaintiffs and defendants.

Plaintiffs' suit was for the recovery of the property in controversy held by Hadlock as a bona fide purchaser for value, under the deed executed by the receiver, Newman, pursuant to a decree of foreclosure, the sale confirmed by the court.

Plaintiffs, in several propositions, submit that, for reasons stated, the trial court should not have taken the issues from the jury and instructed for defendant Hadlock. The several reasons stated are, substantially, the following: The defendant bank, in its former suit against Spence and wife, through the receivership, wrongfully caused the income from the property in controversy to be taken from them so that they had no means of employing attorneys to defend said suit;

that the attorneys first employed by plaintiffs were in reality attorneys for the defendant bank and abandoned plaintiffs' defense; that plaintiffs were not present and not represented by attorney or any one when judgment under which Hadlock claims was rendered fixing and foreclosing the lien on the property in controversy; that the property was plaintiff's business homestead; that through no fault of plaintiffs they were deprived of presenting their defenses in said suit; that where there is testimony which, if true, is sufficient to warrant plaintiffs' recovery, the case must be submitted to the jury; that the court was without jurisdiction and power to appoint a receiver upon the petition of the owner of the property, and title acquired under sale by such receiver to subject to collateral attack in an action of trespass to try title without suing to set aside the proceeding itself; the court was without power to appoint a receiver for property not set out in a petition for his appointment, and title acquired to such property under sale by such receiver is subject to collateral attack in an action of trespass to try title; where the court appointed the receiver and orders him to employ an attorney to defend the suit, plaintiffs are not at fault where the receiver fails to employ an attorney, and where plaintiffs by reason of such failure are not represented in the suit to which they had a good defense, the judgment should be set aside; the court did not appoint a master in chancery; plaintiff occupying the property as his business homestead at the time the receiver took possession, the court was charged with notice that the property was plaintiffs' business homestead, and was without jurisdiction to render judgment fixing a lien on the property; the property was not advertised and sold as under execution, and for that reason the sale was void and subject to attack in plaintiffs' action of trespass to try title; Hatlock's answer setting up no special ground of defense but merely asking that his title be quieted is not a counterclaim or cross-action; the nonsuit granted by the court as to the defendant bank only is a denial of the motion for nonsuit.

To sustain the judgment of the trial court it must appear from the record that, without the motion for nonsuit, Hadlock was entitled to an instructed verdict, and that plaintiffs were not entitled to nonsuit as to Hadlock.

Without discussing plaintiffs' propositions severally we will discuss the whole situation, as we view it, as affecting a final result.

[1] Plaintiffs seeking recovery of the property in controversy, the Lucerne Apartments, held by Hadlock as a bona fide purchaser for value under the deed executed by the receiver, pursuant to the decree of foreclosure, the sale to Hadlock confirmed by the court, can do so only when the proceedings show on the face of the record that they are void and not voidable only. If the sale to Hadlock was not void by reason of the matters complained of but voidable only, to set aside the judgment plaintiffs must plead and prove a good defense to the original suit, which the record shows they have not done, unless it appears that the property in controversy was the business homestead of Spence at the time the receiver took possession, and unless the fact that the property was the business homestead would render the judgment foreclosing the mortgage liens void and the sale void, which we will discuss later, since under the law and under the order of the court appointing the receiver the receiver could take possession of the exempt property only. Without discussing the question at length at this time, we will assume that the fact that Spence consented to the appointment of the receiver and to the taking possession of the property in controversy by the receiver did not change the character of property as the business homestead if it was so in fact.

[2] It is undisputed, we think, so far as the record discloses, that Hadlock was a bona fide purchaser for value, that he bought the property at the receiver's sale with no information of Spence's insanity or mental condition, and, in fact, with no information as to any of the matters above stated in the several propositions as grounds for setting aside the judgment and sale of the property by the receiver; and especially would that be so where the matters complained of were not matters of record in the case in which the receiver was appointed. Hadlock paid $75,000 for the property relying solely on the judgment rendered and such facts in the sale of the property as the law charges him with notice. No question is made as to the sufficiency or validity of the judgment or order of sale or the confirmation of the sale. But, conceding for the purpose of the statement we make, that Spence was insane, or mentally unbalanced, that he was not represented at the time judgment was entered, that attorneys had improperly advised him as to his best interests, and other matters stated in the several propositions, none of the matters complained of are disclosed on the face of the record, and it is well settled by the decisions of the Supreme Court and other appellate courts in this state that a judgment against an insane person is not void and cannot be attacked in a collateral action, but only in a direct proceeding for that purpose. Howell v. Fidelity Lumber Co. (Tex. Com. App.) 228 S. W. 181, affirming the disposition of the case by the Beaumont Court of Civil Appeals, 206 S. W. 947. The trial court had jurisdiction over the parties and the subject-matter of the former suits, and of this suit, entered final judgment, and took possession of the property through the receiver appointed, foreclosing the liens on the property in controversy as expressed in the several mortgages, ordered the sale of

the property to satisfy the judgment rendered, and confirmed the sale made to Hadlock.

[3] It is urged by plaintiffs that the receiver was appointed on application of Spence. The record shows that all parties made application for the appointment of the receiver, Spence joining in the application with the other parties. The court has the inherent power to appoint a receiver on its own motion without an application therefor. Crawford v. Crawford (Tex. Civ. App.) 163 S. W. 115; Waters Pierce Oil Co. v. State, 47 Tex. Civ. App. 299, 105 S. W. 851; James v. Roberts Tel. & Elec. Co. (Tex. Com. App.) 206 S. W. 933; Lauraine v. Ashe, 109 Tex. 69, 191 S. W. 563, 196 S. W. 501.

[4] We might further say, in view of one of plaintiffs' propositions that the property should have been sold by the sheriff or constable as under execution, and not having been so sold the sale was void, that there was no error in the cause effecting a sale of the property through the receiver. The statutes that require the sale of property by the sheriff under process of execution or order of sale may be resorted to by the court administering the property through a receiver, but these provisions of the law are not exclusive, and the court may, in the exercise of its discretion, order a sale by the receiver. Farmers' & Merchants' Nat. Bank v. Waco Elec. R. & Light Co. et al. (Tex. Civ. App.) 36 S. W. 131.

[5, 6] The court ordered the receiver to make an effort to sell the property "at public or private sale." This the receiver did, and after other bids made and reported to the court were rejected, the bid of Hadlock was accepted and confirmed by the court and the receiver ordered to convey by deed the property to Hadlock, which the receiver did. Now, a purchaser under a deed from a receiver is not bound to examine all of the proceedings in the case in which a receiver is appointed. It is sufficient for him to see that there was such suit of which the court had jurisdiction of the parties, and of the subject-matter of the suit and in which the court appointed a receiver of the property; that the sale was ordered made by the receiver; that the sale was made as ordered and confirmed by the court. The purchaser is not bound to inquire whether any errors, such as are complained of, intervened in the trial, or irregularities were committed by the receiver in the sale, any more than a purchaser under execution upon a judgment is bound to look into the errors and irregularities of the court on the trial of the case, or of the officer in enforcing the process. Koontz v. Northern Bank, 16 Wall. (83 U. S.) 196, 21 L. Ed. 465; 23 L. R. A. p. 56. Under our statute Article 3818, Rev. Civ. St. 1925 (former article 3768), a purchaser at execution sale is deemed an innocent purchaser without notice in all cases where he would be deemed to be such had the sale been made voluntarily by the defendant in person. Here the judgment and the sale made thereunder, and the receiver's deed, are regular, and the purchaser without notice of irregularities leading up to the sale that would avoid the sale is protected. The purchaser at such sales is not bound to do more than to show a valid judgment, execution, and sale, and is charged only with notice of defects appearing upon the face of either, or such as are developed by an examination of the judgment on which the sale is based. First National Bank v. South Beaumont L. & I Co., 60 Tex. Civ. App. 315, 128 S. W. 436, and cases cited. A careful examination into the record does not, in our opinion, disclose any such fact or irregularity as avoids the sale. Let us examine into some of the matters complained of under the propositions. In giving the several mortgages, and especially the one foreclosed by the judgment in this suit, Spence and wife declared in the instrument itself that the property was not the business homestead, and indicated his business homestead to be elsewhere. Aside from that Spence's business was that of real estate investments, renting and selling real estate for himself and others, and insurance, which continued from 1906 to 1920. He conducted this business from his residence home on Montana street until December 14, 1916, when he bought the property in controversy, at which time he moved a desk, table, typewriter, a filing cabinet and some chairs to the roof garden on the top of the building. About two weeks later a tenant moved out of one of the storerooms on the ground floor, and Spence moved into the vacant storeroom and put a "For Rent" sign on the window. Later he rented this storeroom, and, with the consent of the renter, kept his desk, chair, and filing cabinet in the store, and the renter used a part of the filing cabinet. Spence said he would have moved out any time the renter wanted him to. He said he claimed the whole building (Lucerne Apartments) as his office. He had no telephone in the apartment building. His business card carried his telephone number at his residence; said he had no phone at the apartment building, "because I didn't want to be confined to any particular place in the building, and be tied down," and "couldn't transact business much over the phone anyway." He had a telephone at his residence and made sales there. In 1917 Spence advertised in the city directory as a real estate and insurance man, and his business address was given at his home on Montana street. To summarize his testimony on the issue of his business homestead it appears that Spence transacted no real estate or insurance business at the Lucerne Apartments; he had no business address to him there; he published no business advertisements that gave

that as his place of business, but all of his business advertisements gave his place of business elsewhere, all through the years and as late as March 21, 1920. While not unmindful of the fact that the extent of the business carried on there will not determine the character of the homestead purposes, we have concluded that the character of the building itself, as stated, and use made by Spence of the Lucerne Apartments, was not such as to impress upon it the character of a business homestead, nor would such use advise those loaning him money or extending him credit, much less strangers, that it was his business homestead. His occupancy of the storeroom was at the will of his tenant. His several declarations to the contrary and the character of the use made of it kept it a secret and affirmatively told the world that his place of business was elsewhere.

[7] One having several places of business can claim only one as his business homestead. The question of a business homestead, as a matter of law, which is separate and apart from the home, presents more than usual difficulty on account of the indefiniteness of the facts, but we think the undisputed facts here distinguish this case from such cases as Pfeiffer et al. v. McNatt et al., 74 Tex. 640, 12 S. W. 821; Hargadene v. Whitfield, 71 Tex. 482, 9 S. W. 475; Forsgard v. Ford, 87 Tex. 185, 27 S. W. 57, 25 L. R. A. 155, and cases with similar facts to those above.

We think the case is also distinguishable from Davis v. Cox (Tex. Civ. App.) 176 S. W. 931, and Henderson v. Wilkinson (Tex. Civ. App.) 159 S. W. 1045, relied upon by plaintiffs.

[8] The use made of the property for purposes contemplated by the Constitution and laws determines the question of fact of the business homestead. To exempt the property from execution, as a business homestead the property must be adapted and reasonably necessary to the business Spence was engaged in, and the property must be used for that business.

These apartments did not have an office room in the building. Shryock & Rowland v. Latimer, 57 Tex. 674; Houston v. Newsome, 82 Tex. 75, 17 S. W. 603; Duncan v. Alexander, 83 Tex. 441, 18 S. W. 817; Van Slyke v. Barrett (Tex. Sup.) 16 S. W. 902.

Without further discussing the business homestead feature of plaintiffs' cause of action, we doubt, under the facts of the case, that if it could be held that the property constituted a business homestead that such fact would constitute a ground of relief. Elstun v. Scanlan (Tex. Civ. App.) 202 S. W. 762.

[9] If we are not in error in our conclusion that the undisputed facts as disclosed by the record show affirmatively as a matter of law that the Lucerne Apartments were not the business homestead of Spence at any time, Hadlock, under his pleading and the evidence, was entitled to an instructed verdict and the court was not in error in not permitting the nonsuit as to Hadlock. We have heretofore sufficiently stated Hadlock's pleading.

[10] Our Revised Civil Statutes 1925, arts. 2016 and 2182, provide that plaintiff by his nonsuit shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief, and that where a defendant has filed a counterclaim seeking affirmative relief, the plaintiff shall not be permitted, by a discontinuance of his suit, to prejudice the right of defendant to be heard on such counterclaim. Short v. Hepburn, 89 Tex. 622, 35 S. W. 1056, qualifying as we understand it, the language used in Hoodless v. Winter, 80 Tex. 638, 16 S. W. 427; Buford v. Buford (Tex. Civ. App.) 40 S. W. 602, and cases cited; Jones v. Wagner (Tex. Civ. App.) 141 S. W. 280.

[11] There are other matters complained of which we will note briefly. Plaintiffs complain that the law firm of Neill & Armstrong, employed by plaintiffs, really attorneys for defendant bank, abandoned plaintiffs' defense, and that plaintiffs were not present and represented by attorney or any one when judgment was rendered fixing and foreclosing the lien on the property. The facts seem to be as follows: Mr. Armstrong, of Neill & Armstrong, held a retainer from the State National Bank. On April 16, 1920, the First National Bank sued Spence; he employed Neill & Armstrong to defend the suit; at that time no suit had been filed by the State National Bank; the law firm of Kemp & Nagle filed the suit of the State National Bank and had citation issued, and without going further into the matter than to say that the firm of Neill & Armstrong advised Spence of their relation to the State National Bank, and dropped out of the suit, and other attorneys took up plaintiffs' defense. Spence testified that he discharged Neill & Armstrong. We see no element of wrong or of inconsistency in the matter of Neill & Armstrong, and certainly nothing to complain of as causing an improper judgment. While advising Spence they advised him to have a receiver appointed to take charge of his properties. Spence refused, but later consented to the receivership.

We think we need not discuss at length the question as to whether plaintiffs' suit is a direct or a collateral attack upon the judgment of the defendant bank, for the judgment rendered is not void nor voidable by reason of the facts shown in the record. Brooks v. Powell (Tex. Civ. App.) 29 S. W. 809; Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325; Estay v. Williams, 63 Tex. Civ. App. 323, 133 S. W. 471.

[12] The petition charges that the two banks in the two suits, the receiver, Newman, and Hadlock fraudulently colluded and combined together for the purpose of depriving plaintiffs of the property, and that by reason

thereof the sale was simulated, fraudulent, and void, but the First National Bank and Newman are not made parties to the suit as is held to be necessary in Brooks v. Powell, supra, to make the suit a direct attack on the judgment. Plaintiffs make no denial of the defendant bank's cause of action, and make no offer to pay same.

No defense is made against the former suit of the defendant bank, except as to the liens on the property and the appointment of the receiver and the sale by the receiver discussed above.

We have concluded that no reversible error is shown by the record, and the case is affirmed.