## MURRAY et al. v. MAGNOLIA PETROLEUM CO. et al.

District Court, N. D. Texas, Wichita Falls Division. December 5, 1927.

No. 224.

1. **Judgment** ⬅➡828(2)—**State judgment may be collaterally attacked in federal court on proof showing want of jurisdiction (Const. art. 4, § 1).**

A judgment of a state court, rendered without jurisdiction over the subject-matter or of the parties, is not protected from attack in a federal court by the full faith and credit clause (Const. art. 4, § 1), but may be collaterally attacked in that court on proof that the state court was without jurisdiction, though in contradiction of its recitals.

2. **Courts** ⬅➡347(1)—**Truth of pleading allegations can be determined only after evidence has been heard (equity rule 33).**

The truth of allegations of a pleading can be determined only after evidence has been heard (equity rule 33).

In Equity. Suit by John Murray and others against the Magnolia Petroleum Company and others. On motion to strike out defendants' supplemental answer. Denied.

Kay, Akin & Smedley, of Wichita Falls, Tex., Seay, Seay, Malone & Lipscomb, of Dallas, Tex., and Barney, Keeney & Barney, of Texarkana, Tex., for the motion.

Carrigan, Britain, Morgan & King and Weeks, Morrow, Francis & Hankerson, all of Wichita Falls, Tex., H. S. Garrett and Callaway & Wade, all of Fort Worth, Tex., and John L. Young and A. S. Hardwicke, both of Dallas, Tex., opposed.

ATWELL, District Judge. William H. Murray died on January 11, 1926, leaving a widow and three minor children. In April after his death the widow married Miller. On March 5, 1927, Mrs. Murray, properly joined by her husband, for herself and children, filed this suit in equity to reclaim valuable oil lands and the proceeds thereof, from the defendants. The amount involved is very large.

It is alleged that Murray was insane at the time he made the grant. In the bill is pleaded a judgment of lunacy rendered in the county court of Wichita county, Tex.

The supplemental answer, at which this motion is directed, attacks this judgment on the ground that it was null and void because the statutory provisions with reference to such trials were not followed.

The plaintiffs claim that such a collateral attack may not be made, that under the Texas system the judgment of a county court in a

lunacy proceeding is not subject to collateral attack (Denni v. Elliott, 60 Tex. 337; McGowen v. Zimpelman, 53 Tex. 479; Gersdorff v. Torres [Tex. Com. App.] 293 S. W. 560; Spence v. State National Bank [Tex. Civ. App.] 294 S. W. 618; Paschal v. Hobby [Tex. Civ. App.] 296 S. W. 336; but see Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084), and that a United States court, sitting in Texas, under the full faith and credit clause of the Constitution, and the statutes made thereunder, will be governed by the state court rule. Article 4, U. S. Constitution; Rev. St. § 905 (28 USCA § 687; Comp. St. § 1519).

The defendants maintain, on the other hand, that the United States court is, in a sense, a foreign court, and that a judgment absolutely void, as specifically alleged in the supplemental answer, may be attacked anywhere, directly or collaterally, whenever it presents itself, either by parties or strangers; that it is a nullity, and may not furnish the basis for evidence, nor of any right.

[1] Going directly to the question, let us concede that the judgment attacked contains all of the necessary jurisdictional recitals; that the record from the state court imports verity. May the parties in another cause in the United States court show by proof aliunde the record that it was in fact obtained without due process of law?

For a time there was some uncertainty with reference to the effect to be given by the United States courts to state court judgments. It was contended that the full faith and credit clause preserved state court judgments from collateral attacks in the United States courts, whether they had been regularly obtained or not. This contention was followed by the assertion that, even though the judgment roll might indicate a defect, that it would be presumed that the defect in fact did not exist, and that the judgment was in all things regular.

The manifest danger of this drift first became apparent when it was remembered that the national court was bound to respect the fundamentals of the national Constitution. If, therefore, a state court judgment was plainly in violation of this Constitution, it could not be protected by the fourth article thereof, because such protection would defeat the very purpose and existence of the national court, and would render meaningless the fundamental national law.

There is a national right that is the property of every citizen. He has a right to have the local law administered judicially and not arbitrarily and to have a free, fair, and impartial state tribunal. The strength of the growth of this fundamental national right will be grasped by reading carefully the case of Frank v. Mangum, 237 U. S. 310, 35 S. Ct. 582, 59 L. Ed. 969, and the case of Moore v. Dempsey, 261 U. S. 86, 43 S. Ct. 265, 67 L. Ed. 543. As the nation grows more populous, the importance of this protection becomes more valuable. It is the very heart of the beauty of our system. See Hagar v. Reclamation District, 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569.

Primarily every judgment in every court depends upon the power of the court to render it. If the court is without power from a lack of jurisdiction over the subject-matter or over the person, then the judgment is mere sound. When there is such jurisdiction, then the judgment becomes adamant and is so respected in either domestic or foreign court. Huntington v. Attrill, 146 U. S. 657, 13 S. Ct. 224, 36 L. Ed. 1123; Haddock v. Haddock, 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1; D'Arcy v. Ketchum, 11 How. (52 U. S.) 165, 13 L. Ed. 648; Thompson v. Whitman, 18 Wall. (85 U. S.) 457, 21 L. Ed. 897; Old Wayne Mutual Life Association v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 51 L. Ed. 345; Christmas v. Russell, 5 Wall. 290, 18 L. Ed. 475; Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U. S. 111, 32 S. Ct. 641, 56 L. Ed. 1009, Ann. Cas. 1913E, 875; Copper v. Newell, 173 U. S. 555, 19 S. Ct. 506, 43 L. Ed. 808; Hovey v. Elliott, 167 U. S. 409, 17 S. Ct. 841, 42 L. Ed. 215; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Smith v. Woolfolk, 115 U. S. 143, 5 S. Ct. 1177, 29 L. Ed. 357. See, also, Andrews v. Andrews, 188 U. S. 14, 23 S. Ct. 237, 47 L. Ed. 366.

The cases of Smith v. Mosier (C. C.) 169 F. 431, George T. Smith Middlings Purifier Co. v. McGroarty, 136 U. S. 237, 10 S. Ct. 1017, 34 L. Ed. 346, and Kelley v. Morrell (C. C.) 29 F. 736, are easily distinguishable, nor can they make a rule with reference to this matter different from that announced above.

[2] The allegations of the answer may be determined only after the evidence shall have been heard. Churchward International Steel Co. v. Bethlehem Steel Co. (D. C.) 233 F. 322; Atlantic Refining Co. v. Port Lobos Corporation (D. C.) 283 F. 701; equity rule 33.

It necessarily follows that, where a pleading under oath in the United States court attacks the very vitals of a state court judg-

ment that is pleaded by the adversary, the court will not strike such pleading but will hear the evidence.